[No. H008180. Sixth Dist. Mar. 18, 1992.]

MICHAEL HAT FARMING COMPANY, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO, Real Party in
Interest.

1038

**COUNSEL**

Hanson, Bridgett, Marcus, Vlahos & Rudy, Jerrold C. Schaefer and Lee Ann M. La France for Petitioner.

Michael D. Stump for Respondent.

No appearance for Real Party in Interest.

## OPINION

**ELIA, Acting P. J.—**

### 1.  *Introduction*

Michael Hat[1] petitions this court to set aside a February 1991 decision by California's Agricultural Labor Relations Board (ALRB) determining petitioner to be an agricultural, joint successor employer obliged to bargain in good faith with the United Farm Workers of America, AFL-CIO (UFW), real party in interest. The ALRB decision affirmed a decision by an administrative law judge. It orders petitioner to bargain collectively in good faith with the UFW; to honor the terms and conditions of a collective bargaining agreement between the UFW and a predecessor employer; to make whole agricultural employees for lost pay and other economic losses from January 1, 1989; to publicize the decision; and to prove compliance to the ALRB. (17 A.L.R.B. No. 2, pp. 7-9.)

Petitioner contends the ALRB decision is not supported by substantial evidence. The central issue is when a land manager becomes an agricultural employer. ▇ We uphold those factual findings by the ALRB that are "supported by substantial evidence on the record considered as a whole." (Lab. Code, § 1160.8[2] ; *Martori Brothers Distributors* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 721, 727 [175 Cal.Rptr. 626, 631 P.2d 60]; *Carl Joseph Maggio, Inc.* v. *Agricultural Labor Relations Bd.* (1984) 154 Cal.App.3d 40, 54-55 [201 Cal.Rptr. 30].) After reviewing the record, we will affirm the ALRB decision.

### 2.  *Facts*

In March 1989 the UFW initiated this proceeding by charging petitioner before the ALRB with failing to bargain from December 1988 concerning employing its members in certain vineyards in San Benito County.

The vineyards were covered by a collective bargaining agreement between the UFW and Almaden Vineyards (former owner) effective from January 1, 1986, to December 31, 1988. In March 1987 former owner sold the vineyards to Heublein (owner) and notified UFW employees they were terminated and gave them severance pay.

---

[1]Hat uses the business name "Michael Hat Farming Company" and formerly used "Capello Vineyards."

[2]Unspecified section references are to the Labor Code.

In 1987 and 1988 owner leased the vineyards to Glenn Ellen Winery (lessee). Lessee began farming the vineyards with labor contractors, but soon agreed to hire UFW workers previously employed by former owner.[3] At the end of the harvest in October 1988, owner did not renew lessee's lease, so lessee's operation was shut down and its workers were laid off.

In December 1988 the UFW requested petitioner to bargain for a new agreement based on information that owner was considering leasing the vineyards to him. Petitioner told UFW representatives he was not sure he was going to be running the vineyards. They brought him a list of potential employees.

In January 1989 owner retained petitioner to prune the vineyards. Petitioner hired five or six different labor contractors to prune the property in late January. One of the contractors hired some UFW employees who had worked on the property for former owner and lessee.

In February 1989 owner and petitioner entered a written "Vineyard Management Agreement," which petitioner did not fully read. The agreement contains the following pertinent provisions. "Owner hereby engages Manager as an independent contractor to farm and manage the Vineyards . . . ." His duties include "overall management and supervision of the care and cultivation of the Vineyards," including "[f]urnishing all of the labor, supervision, equipment, materials and supplies necessary or desirable in connection with the foregoing." Petitioner is to provide an annual budget for owner's approval. Petitioner is to keep owner updated on at least a monthly basis of his progress and costs and owner is to advance monthly budget payments. Petitioner is to be compensated on a monthly basis at a fixed fee per farmed acre. The agreement will continue in effect from year to year unless terminated by either party. Petitioner is subject to termination for cause. "Manager shall be solely responsible for selecting and hiring its own employees and for their supervision, direction and control. Moreover, Manager shall be solely responsible for setting wages, benefits, hours and working conditions for such employees; for furnishing, during the entire period of this Agreement, workers' compensation insurance coverage; for paying wages and social security; for paying unemployment insurance and disability insurance contributions; and for withholding taxes with respect to such employees." Manager can employ labor contractors and is responsible for insuring their compliance with applicable licensing requirements. Petitioner was unaware the agreement expressly provided in Section 8.7 "that Manager is the sole agricultural employer of persons engaged to perform agricultural services pursuant to this agreement."

---

[3] Petitioner's role in this operation is discussed below.

Owner has two agents monitoring petitioner's work. One is at the vineyards daily and the other comes in weekly. Every month petitioner obtains owner's approval of what needs to be done. Petitioner is reimbursed by owner on a monthly basis for buying materials, renting equipment, and hiring labor contractors.

Owner's daily agent told a UFW member to talk to petitioner about work. Petitioner hires people through labor contractors, except for three people, an irrigator, a sprayer, and a mechanic. He did not respond to the UFW bargaining requests because, in his opinion, he did not have a contract with the UFW.

The management agreement is not petitioner's first involvement with the vineyards. He rendered the same services to lessee in 1987 and 1988 under an oral contract. Lessee's general partner, Mike Benzinger, hired petitioner in March 1987 to produce a grape crop from the vineyards. He was paid a certain amount monthly per acre for his viticultural services and did not receive a percentage of the profit.

At the beginning of the year, lessee approved a budget prepared by petitioner, although lessee later made some changes. Benzinger supervised petitioner's work by visiting the vineyards once or twice a month and telling him what he wanted done. When petitioner first took over, he hired labor contractors to perform the pruning, cultivating, spraying, and harvesting.

Within a few weeks, lessee notified petitioner of a scheduled meeting with the UFW. At the meeting, which petitioner attended, lessee agreed to hire UFW workers for the vineyards. Benzinger signed a written agreement arising out of that meeting.[4] Petitioner printed his name and "Capello Vineyards" below Benzinger's signature "because I would be providing the services and acting as his agent." Petitioner denied taking any part in that agreement.

After this meeting, petitioner hired UFW workers who had previously worked at the vineyards because lessee "asked me to." Benzinger told petitioner how many employees of different types, such as grape pickers, to use. Lessee reimbursed petitioner for paying the UFW employees and making contributions to the UFW benefit fund on the employees' behalf. Petitioner abided by the UFW contract in 1987 and 1988. Lessee also reimbursed petitioner for the cost of materials and equipment rental. Most of the equipment he used was left over from former owner.

---

[4]This agreement was not introduced into evidence.

Before the harvest in September and October, Benzinger met with the UFW and determined how many people were needed for the harvest. Petitioner implemented what Benzinger told him. Lessee had owner make the wine at a winery at the vineyards. A subordinate of Benzinger checked the quality of the grapes at the winery on a daily basis.

After the lease was not renewed in October 1988 petitioner did nothing on the property until the January 1989 pruning. Ordinarily he would have irrigated and cleaned up the vineyards.

3. *Is petitioner an agricultural employer?*

California's Agricultural Labor Relations Act (ALRA) provides: "The term 'agricultural employer' shall be liberally construed to include any person acting directly or indirectly in the interest of an employer in relation to an agricultural employee, any individual grower, corporate grower, cooperative grower, harvesting association, hiring association, land management group, any association of persons or cooperatives engaged in agriculture, and shall include any person who owns or leases or manages land used for agricultural purposes, but shall exclude any person supplying agricultural workers to an employer, any farm labor contractor as defined by Section 1682, and any person functioning in the capacity of a labor contractor. The employer engaging such labor contractor or person shall be deemed the employer for all purposes under this part." (§ 1140.4, subd. (c).)

Section 1682, subdivision (b), not part of the ALRA, defines a "farm labor contractor" as "any person who, for a fee, employs workers to render personal services in connection with the production of any farm products to, for, or under the direction of a third person, or who recruits, solicits, supplies, or hires workers on behalf of an employer engaged in the growing or producing of farm products, and who, for a fee, provides in connection therewith one or more of the following services: furnishes board, lodging, or transportation for such workers; supervises, times, checks, counts, weighs, or otherwise directs or measures their work; or disburses wage payments to such persons." Farm labor contractors are licensed by the state. (§ 1683.)

It is established that some farming operations have multiple, joint agricultural employers (*Rivcom Corp.* v. *Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 768-769 [195 Cal.Rptr. 651, 670 P.2d 305]) and that successor agricultural employers assume the collective bargaining obligations of their predecessors. (*Id.* at pp. 764-765; *San Clemente Ranch, Ltd.* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 874, 885, 891 [176 Cal.Rptr. 768, 633 P.2d 964]; *Babbitt Engineering & Machinery* v. *Agricultural Labor Relations*

*Bd.* (1984) 152 Cal.App.3d 310, 319-320, 325 [199 Cal.Rptr. 445].) Petitioner does not dispute these propositions. Although arguing he is neither a joint nor a successor employer, petitioner's essential contention is that he is simply not an agricultural employer at all.

We are required to identify indicia of an agricultural employer. The administrative law judge (ALJ) stated in his decision: "I confess I cannot find any case like this." We have the same difficulty. The question of who is an agricultural employer has rarely surfaced in California appellate decisions. In *Rivcom Corp., supra,* 34 Cal.3d 743, the issue arose in the context of determining whether the corporate lessee of a farm was a joint employer along with a labor supplier. Although the labor supplier hired and fired workers and established their wages and hours, the court upheld an ALRB finding that the lessee was a joint employer. (*Id.* at pp. 768-769.) The lessee made the daily management decisions, including directing the workers and helping select them. (*Id.* at p. 769.) "Most significantly," the ALRB determined that the lessee "had 'the substantial long-term interest in the ongoing agricultural operation' which made it appropriate to fix employer responsibilities on" it. (*Id.* at p. 768.) Petitioner is more like the labor supplier in *Rivcom Corp.* than the lessee.

The ALRB and the courts look to "applicable precedents of the National Labor Relations Act" (NLRA) for guidance. (§ 1148; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 404, fn. 5, 412-413 [128 Cal.Rptr. 183, 546 P.2d 687].) We do not expect to find any parallel situation involving agriculture arising under the NLRA because agricultural laborers are expressly excluded from its coverage. (29 U.S.C. § 152(3); *Pasillas* v. *Agricultural Labor Relations Bd.* (1984) 156 Cal.App.3d 312, 327 [202 Cal.Rptr. 739].) Federal courts have identified indicia of joint employers in other businesses for purposes of the NLRA. (See Annot. (1985) 73 A.L.R.Fed. 609.)

We find guidance in *Tanforan Park Food Purveyors Council* v. *N. L. R. B.* (9th Cir. 1981) 656 F.2d 1358, cited by neither side. At issue there was whether the manager of a shopping center was the joint employer of certain shopping center workers. The manager was responsible for the entire shopping center, including a restaurant complex. (*Id.* at p. 1360.) The restaurant complex surrounded a common area that was operated by a council consisting of all the restaurants. An agent of the council hired, supervised, and fired the janitors and dishwashers and other concerned workers, set their wages and hours, and paid their wages and workers' compensation insurance. (*Id.* at pp. 1360-1361.) The council's agent was hired and controlled by the manager and the manager had the authority to fire any worker. (*Id.* at p. 1361.)

The court upheld the NLRB's conclusion that the manager and the council were joint employers, because both exercised " 'authority over employment conditions which are within the area of mandatory collective bargaining.' [Citation.]" (*Ibid.*) Joint employers "share or co-determine those matters governing essential terms and conditions of employment" (*N. L. R. B.* v. *Browning-Ferris Industries, Etc.* (3d Cir. 1982) 691 F.2d 1117, 1124) as the ALRB recognized here. (17 A.L.R.B. No. 2, p. 2.)

Here, the vineyards management agreement between owner and petitioner expressly identifies petitioner as the agricultural employer as well as conferring on him authority to hire, supervise, and fire employees and to set their wages, benefits, hours, and working conditions. ■ It is true, as petitioner contends, a contractual description of the parties' business relationship is not necessarily controlling. What is important is the underlying reality. However, a contract's provisions may be an important factor in defining the reality of the business relationship. (*International House* v. *N. L. R. B.* (2d Cir. 1982) 676 F.2d 906, 913.)

■ In a footnote, petitioner calls the vineyards management agreement a sham, arguing he testified that owner retained daily control over the vineyards. While owner has an agent in place daily to monitor petitioner's activities, petitioner did not testify that he was deprived of authority to hire, supervise, and fire vineyard workers, or to set their wages and hours. In fact, when a UFW member asked owner's daily agent about getting work, he was referred to petitioner.

The ALJ concluded petitioner "is no different from any other land management company which, . . . is hired by successive owners or lessees of agricultural property." The ALRB's decision quoted this passage with approval. (17 A.L.R.B. No. 2, p. 6.) ■ While statutory interpretation is ultimately a judicial question, we respect the views of administrators experienced in implementing statutes. (Cf. *Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 24 [173 Cal.Rptr. 856].) ■ We agree with the ALRB and the ALJ that petitioner fits the statutory definition of an agricultural employer. Petitioner "manages land used for agricultural purposes" while "acting directly or indirectly in the interest of an employer."

Petitioner points out he has no ownership interest in the vineyards or the crop. The statutory definition extends to those, such as lessees, without ownership interests in agricultural property. Petitioner contends he "has no continuing relationship to the operation of" the vineyards. As noted above,

this can be an important factor. Petitioner oversaw the grape production for lessee for two years before owner retained him. Even if petitioner had no prior involvement with the vineyards' operations, however, both the management agreement and actual practice gave him sufficient authority over the terms and conditions of employment of the vineyard workers to make him an agricultural employer beginning in January 1989.

As just indicated, petitioner's prior relationship with lessee has some relevance, though limited. In our view, both the ALRB and petitioner have made too much of that relationship. Petitioner was not charged with failure to bargain before December 1988, two months after lessee lost its lease. The prior relationship is significant only insofar as petitioner testified he rendered the same services for lessee that he is obliged to render for owner. Petitioner also testified to some differences. As noted by the ALJ, owner "exerted even more day-to-day control over vineyard operations" than lessee. Moreover, the current relationship is clarified by a written contract, which petitioner did not have with lessee. ■ Thus, we see no need to ascertain petitioner's exact role in the meeting with lessee and the UFW or his responsibility for setting workers' wages while working for lessee.[5] It is unnecessary for us to determine whether substantial evidence supports the ALRB's conclusion that petitioner and lessee were joint employers. (17 A.L.R.B. No. 2, p. 5.) Petitioner can be an employer succeeding lessee without also succeeding himself.

■ Petitioner disputes that he is a successor employer. He contends there is no basis for determining anyone succeeded former owner because there was no evidence of former owner's business. Petitioner does not suggest what else someone could do with a vineyard other than grow grapes. The ALJ erred in stating "General Counsel adduced no evidence about the business of" former owner. Two workers who helped prune the vineyards in January 1989 for one of petitioner's labor contractors testified they previously worked at the vineyards for lessee and for former owner, Almaden Vineyards. It is reasonable to infer that the business of the vineyards remains the same—production of grapes—that it was when owned by former owner. (Cf. *San Clemente Ranch, Ltd., supra,* 29 Cal.3d at p. 891.)

Petitioner contends that if anyone is a successor employer it is owner. This contention overlooks the amount of authority over vineyard workers owner has conferred on petitioner. In our view, owner and petitioner jointly succeeded former owner. Owner acquired the property and business and delegated its authority to employ vineyard workers to petitioner. We agree with

[5]We are not discounting that participation in collective bargaining can be another employer identifier. In this case the evidence on this point is unimpressive.

the ALJ it is "curious" that owner was not named as a party to the administrative proceedings. It is not the case, however, petitioner is being found an agricultural employer by default. Petitioner has sufficient daily authority over the essential terms and conditions of the employment of the vineyard workers to qualify as a successor agricultural employer.[6]

### 4. *Disposition*

The decision of the ALRB is affirmed.

Bamattre-Manoukian, J., and Agliano, J.,* concurred.

---

[6]Since owner is not a party to these proceedings, we intimate no predetermination that owner is an agricultural employer.

*Retired Presiding Justice of the Court of Appeal, Sixth District, sitting under assignment by the Chairperson of the Judicial Council.