[No. C015247. Third Dist. Aug. 23, 1994.]

SUPERIOR CARE FACILITIES et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and RAMONA
CALDERON, Respondents.

## COUNSEL

Baker, Cornell & Baumbach and Larry L. Baumbach for Petitioners.

Arostegui, Cooke, Epley & Gengler and G. Steven Jones for Respondents.

## OPINION

**RAYE, J.**—Forest Place Residential Health, a business entity licensed to operate a residential care facility, and its management company, Superior

Care Facilities, petition for a writ of review of the Workers' Compensation Appeals Board (Board) order compelling them to provide the applicant, Ramona Calderon, her statutory remedies for her wrongful termination following a work-related injury. Since an earlier management company, now bankrupt, employed the applicant, petitioners contend they are not responsible for the statutory remedies provided by Labor Code section 132a. We shall annul the Board's order in part and remand for further proceedings consistent with this opinion.

### FACTS AND PROCEDURAL BACKGROUND

On June 19, 1989, Calderon, a personal care attendant at Forest Place, filed an application for adjudication of her claim for compensation for the injury she sustained while lifting a patient. She also filed a petition for additional benefits asserting she was terminated for exercising her workers' compensation rights. (Lab. Code, § 132a.) In both the application and petition, Forest Place was named as her employer and the State Compensation Insurance Fund as the insurer for Forest Place.

The record reflects that liens, doctor's reports, the official service records of the Board, minutes, and awards all indicate that Forest Place was the applicant's employer. On March 14, 1991, State Fund stipulated the applicant was employed by Forest Place. State Fund counsel, James Fischer, appeared on behalf of Forest Place. The applicant was awarded reimbursement for treatment and medical/legal costs; the Labor Code section 132a issue was not before the Board.

A hearing on the Labor Code section 132a claim was separately set for January 1992. Forest Place, again identified as employer, although served with notice of the hearing, did not appear. The minutes of the hearing identify Forest Place as the employer and reflect it was properly served with notice. Before ruling on the section 132a petition, the workers' compensation judge served Forest Place with a notice of his intention to submit the matter unless defendant showed good legal cause for its absence.

On January 24, 1992, a letter composed on "Forest Place Residential Care Facility" stationery informed the Board that Superior Care, then currently operating Forest Place, never employed the applicant and retained none of her employment records. The Board received no response to the notice of intention to submit the Labor Code section 132a petition.

On March 25, 1992, the workers' compensation judge sustained the petition and ordered Forest Place to reinstate the applicant to the position she

held at the time of her termination and to reimburse her for all wages and benefits. On April 7, 1992, Forest Place petitioned the Board for reconsideration and for the *first time* asserted, "Applicant was not ever an employee of defendant FOREST PLACE."

The workers' compensation judge recommended the petition for rehearing should be denied. The judge wrote: "The above entitled case came before this Board for Hearing on 1/16/92 after Notice of Hearing was sent and received by Defendant Forest Place (acknowledge in letter of 1/24/92). They did not appear, or file written objection to the hearing. Prior to this time there had been earlier hearings, all of which had notice sent to defendant Forest Place to which no receipt of denial had been received by the Board nor does it appear that they claim prior notice to this Board. Also, both EDD and SCIF had defendant as the employer as of the date of injury in June, 1989.

"It should be noted that defendant's statements in the Petition for Reconsideration, relative to their not being the employer, are improper procedurally, as they are attempting to present evidence through this Petition which could well have been presented at the time of the hearing, but by their own choice declined to appear and submit this denial.

"It is also noted that the letter in response to the Notice of Intent indicates the present operator of Forest Place (Superior Care Facility Management, Inc.) did not hire applicant, not that applicant had not been hire[d] [as] an employee in June 1989 of Forest Place.

"It is also noted that Galen Fillmore states under penalty of perjury in this Petition for Reconsideration, that applicant was not ever an employee of Forest Place [3(a)] and that by letter to the Board advised that applicant was not an employee of Forest Place nor ever been an employee of Forest Place [3(b)]. The letter does not so state, as indicated, it states the operator, Superior Care has never employed applicant.

"There is no evidence, one way or another, as to when Superior Care Facility Management, Inc. took over operation of Forest Place, although their letter would infer that there was a prior operator since they suggest contacting applicant's prior employer. Regardless, if the employment was when there was a prior operator of Forest Place, the liability would pass with the ownership and the new owner would appear to be responsible to third parties such as applicant.

"Aside from the lack of apparent merits of the Petition for Reconsideration, it would appear that there is flagrant perjury involved as to either the

Petition for Reconsideration or in the testimony, as to employment by Forest Place in June of 1989, which should be referred to the Attorney General's Office or the Fraud Division for investigation and action.

"As to the issue of the Petition for Reconsideration, since the allegation of not an employee [is] not newly discover[ed], and defendant had notice and opportunity to appear and present this claim and chose not to, and further, there being credible evidence in this Board's file that defendant was the employer and did terminate applicant in violation of L.C. [Labor Code] 132a, the Petition should be denied."

The Board, nevertheless, granted the petition for reconsideration. The Board ordered: "Based on this record, we are also persuaded that Superior Care Corporation, Inc., as the current operator of Forrest (*sic*) Place, should be joined in this matter, and that the WCJ should conduct further proceedings as necessary to clarify the record and identify the correct party or parties actually liable for the violation of 132a." A new hearing was held on July 14, 1992, but no new evidence was admitted. Rather, the parties submitted briefs on the liability of a successor corporation.

In its brief, Forest Place provided a sketch of the relationship between the various business entities involved in the operation of the residential care facility. Forest Place asserted that Yuba Sutter, incorporated in January 1987, managed Forest Place until December 31, 1989, and held the license to operate until February 24, 1992. Yuba Sutter declared bankruptcy. Superior Care, incorporated on January 18, 1990, signed a management agreement to operate the facility in January 1992. Forest Place, a limited partnership, currently carries the license.

The workers' compensation judge made the following findings: "1.   That Forest Place Residential Care Facility was the employer subject to actions under L.C. [Labor Code] 132a during the period of June 1989. [¶] 2.   That Yuba Sutter Care, Inc. was a corporation contracted to manage Forest Place during the period June 1989. [¶] 3.   That Forest Place and Yuba Sutter would be jointly and severally liable for any wrongful termination occurring in June of 1989. [¶] 4.   That Superior Care Facility Management, Inc. is the current operator of Forest Place. [¶] 5.   That Superior Care Facility Management, Inc. would be liable for any judgment for violation of L.C. [Labor Code] 132a by Forest Place, if Forest Place is not legally . . . capable of responding to such judgment." Yuba Sutter and Superior Care were ordered joined as co-employer defendants with Forest Place Residential Care Facility.

The report of the workers' compensation judge on the petition for reconsideration, adopted by the Board in rejecting a second petition for reconsideration, expanded on the factual findings and disposition. The judge found the applicant was employed by "Forest Place Residential Health," a licensed facility. At the time of the wrongful discharge the facility was managed by Yuba Sutter Care, Inc. The facility later became a limited partnership, operating under the same license at the same location, and contracted with Superior Care to manage the operations.

Based on these factual findings, the judge concluded the applicant was employed by Forest Place, which had a management contract with Yuba Sutter. "Thus the violating parties would be Forest Place as the employer and Yuba Sutter as the management agency. Since Yuba Sutter is defun[ct], it would leave as the only responsible party, Forest Place, who there after became a limited partnership. It does not appear that there has been any substantial change in the employer, only in the organizational structure, and thus the liability would remain with the facility, and they would be the responsible and liable party for acts of Forest Place in June 1989."

"Since Superior has taken over the management of the business, and one of the provisions of a judgment under L.C. [Labor Code] section 132a is restoration of employment and back wages, and benefits, it appears that they would then be responsible for compliance with any order to reinstate and pay back benefits, as such manager."

DISCUSSION

Labor Code section 132a provides: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

██ Whether the parties have entered into an employment relationship, including the determination of who constitutes the employer, is a question of

fact. (*Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 838 [5 Cal.Rptr.2d 52]; *Spradlin* v. *Cox* (1988) 201 Cal.App.3d 799, 806 [247 Cal.Rptr. 347].) A person rendering services for another is presumed to be an employee; the alleged employer bears the burden of establishing the lack of an employment relationship. The Board has exclusive jurisdiction to determine whether the presumption has been overcome. (Lab. Code, § 3357; *Jones* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 124, 127-128 [97 Cal.Rptr. 554].) The Board's factual findings must be upheld if supported by substantial evidence, even if there are conflicting inferences to be drawn from the evidence, but the court is not bound by the Board's conclusions on questions of law. (*Barns* v. *Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524, 530 [266 Cal.Rptr. 503].)

■ The Board, by adopting the workers' compensation judge's report, found that Forest Place was the employer. There is ample evidence to support the Board's factual findings. Forest Place was the licensed facility where the applicant reported to work and was directed to perform her duties. As the workers' compensation judge acknowledged in his initial recommendation to deny the petition for rehearing of the Labor Code section 132a claim, for more than three years Forest Place failed to object to its characterization as the employer, despite being served with copies of applications, notices, liens, and orders. Moreover, its insurer stipulated to a finding Forest Place employed the applicant. To belatedly disclaim an employment relationship after its insurer had satisfied the medical expenses is beyond the pale.

■ The liability of Superior Care presents a more difficult issue. Superior Care argues there is no evidence upon which to impose liability as a successor corporation to Yuba Sutter. ■ Further, in response to our request for additional briefing, Superior Care asserts it was improperly joined as a party to the proceedings and never consented to the Board's jurisdiction.

We reject Superior Care's belated objections to joinder. Pursuant to its broad equitable powers, the Board joined Superior as an interested party. (Lab. Code, § 5307.5, subd. (b).) Applicant correctly points out Superior did not object to the joinder but argued the merits of the case. There is nothing in the record to support Superior Care's claim its lawyer appeared specially on its behalf. Hence, we conclude Superior Care waived any objection it may have had to the joinder by failing to assert the defense and by proceeding on the merits. (*Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521, 534 [234 Cal.Rptr. 795].)

■ The workers' compensation judge reasoned that Superior Care as the successor to Yuba Sutter "would then be responsible for compliance with

any order to reinstate and pay back benefits. . . ." The judge cited no authority for this sweeping proposition, and the language of Labor Code section 132a would appear, at first blush, to support a contrary rule. Labor Code section 132a requires an employee-employer relationship. Superior Care was a stranger to the employment relationship at the time of the wrongful termination.

In *City of Anaheim* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 609 [177 Cal.Rptr. 441], a case cited by petitioners, the court declined to apply the provisions of Labor Code section 132a to the admittedly discriminatory conduct of an employer occurring after the applicant had filed a workers' compensation claim and left the city's employment. The city made disparaging remarks to the applicant's subsequent employer related to the applicant's pending claim, and this conduct became the object of a section 132a claim. The court wrote: "The language of section 132a makes clear that what is prohibited is the discharge or threatened discharge of or any other manner of discrimination against an employee by his or her employer on account of the employee's having indicated an intention to file or having filed an application with the Board or on account of the employee's having received a rating, award, or settlement. The statute repeatedly and consistently refers to the 'employer' and the 'employee.'" (124 Cal.App.3d at p. 614.)

Finding the statutory language unambiguous, the court rejected the applicant's plea to consider the declared statutory purpose and policy. "Clearly the statute contemplates an employer-employee relationship at the time of the discharge, threat of discharge or other discriminatory act." (*City of Anaheim* v. *Workers' Comp. Appeals Bd.*, *supra*, 124 Cal.App.3d at p. 614.) (Cf. *Barns* v. *Workers' Comp. Appeals Bd.*, *supra*, 216 Cal.App.3d 524 [Lab. Code, § 132a applies to a former employer's refusal to rehire an employee previously terminated in violation of the statute].)

Our case, however, differs significantly from *City of Anaheim*. In *City*, the issue was whether conduct occurring after a severance of the employer-employee relationship is covered by Labor Code section 132a. The court in *City of Anaheim* said clearly not. Here, the conduct was covered; the issue is whether Superior Care, a stranger to the employment relationship, inherited any responsibility for the conduct by virtue of assuming the management role formerly played by Yuba Sutter. That issue is not addressed by *City of Anaheim* or by the express language of Labor Code section 132a, which neither mandates nor precludes the imposition of liability on a successor entity. Nor, to our knowledge, has the issue been considered in any other reported decision.

There is remarkably little authority on the scope of remedies provided by section 132a generally and none on the authority of the Board to grant relief against successor companies. Our review of state statutes creating similar remedies in other contexts has disclosed a similar dearth of authority. (But see *Rivcom Corp.* v. *Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743 [195 Cal.Rptr. 651, 670 P.2d 305]; *San Clemente Ranch, Ltd.* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 874, 876 [176 Cal.Rptr. 768, 633 P.2d 964]; *Michael Hat Farming Co.* v. *Agricultural Labor Relations Bd.* (1992) 4 Cal.App.4th 1037 [6 Cal.Rptr.2d 179], all relating to the duty of a successor employer to bargain with a previously certified union.)[1] However, cases interpreting the authority to order backpay and reinstatement under the National Labor Relations Act (NLRA) and title VII of the Federal Civil Rights Act are illuminating.

### A.  Successor Liability

In *Equal Emp. Op. Com'n* v. *MacMillan Bloedel Containers, Inc.* (1974) 503 F.2d 1086, an employee filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging sex and race discrimination by her employer, the Flinkote Company. Subsequently, the MacMillan company took over operation of the facility. The nature of the relationship between Flinkote and MacMillan did not appear in the record. Despite the fact MacMillan was not in control of the facility when the alleged acts of discrimination took place, the EEOC filed an action for race and sex discrimination against the company. The district court granted summary judgment in Macmillan's favor because no charges had been filed against it. Relying on precedent developed under the NLRA, the Court of Appeals reversed, quoting with approval *United States Pipe and Foundry Company* v. *N.L.R.B.* (5th Cir. 1968) 398 F.2d 544. " 'To further the public interest involved in effectuating the policies of the Act . . . we are persuaded that one who acquires and operates a business of an employer found guilty of unfair labor practices in basically unchanged form under circumstances which charge him with notice of unfair labor practice charges against his predecessor should be held responsible for remedying his predecessor's

---

[1] Similar remedies are provided under the Fair Employment and Housing Act (Gov. Code, § 12970); the Meyers-Milias-Brown Act (Gov. Code, §§ 3514.5, 3563.3); Agricultural Labor Relations Board (Lab. Code, § 1160.3) and various other statutory provisions (Gov. Code, § 12653 [discharge for disclosing information to law enforcement]; Lab. Code, §§ 98.6 [retaliatory discharge for filing claim with Labor Commissioner], 230 [discharge for service on jury or as a witness], 230.3 [discharge for performance of emergency duty as volunteer firefighter], 230.7 [discharge for required appearance in school after child suspended], 230.8 [discharge for visit to child's school], 2929, subd. (c) [discharge for garnishment of wages], 6310-6311 [discharge for filing complaint with the Division of Labor Law Enforcement]).

unlawful conduct.' " (*Equal Emp. Op. Com'n* v. *MacMillan Bloedel Containers, Inc., supra*, 503 F.2d at p. 1090.)

The court in *United States Pipe and Foundry* thought this position was justified under the NLRA because " '[w]hen a new employer is substituted in the employing industry there has been no real change in the employing industry insofar as the victims of past unfair labor practices are concerned, or the need for remedying those unfair labor practices. Appropriate steps must still be taken if the effects of the unfair labor practices are to be erased and all employees reassured of their statutory rights. And it is the successor who has taken over control of the business who is generally in the best position to remedy such unfair labor practices most effectively.' " (*Equal Emp. Op. Com'n* v. *MacMillan Bloedel Containers, Inc., supra*, 503 F.2d at p. 1090.)

The *MacMillan* court found this justification equally appropriate under title VII. "Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy. In the case where the predecessor company no longer had any assets, monetary relief would be precluded. Such a result could encourage evasion in the guise of corporate transfers of ownership. Similarly, where relief involved seniority, reinstatement or hiring, only a successor could provide it." (*Equal Emp. Op. Com'n* v. *MacMillan Bloedel Containers, Inc., supra*, 503 F.2d at pp. 1091-1092.)

The Supreme Court reached a similar result under the NLRA in *Golden State Bottling Co.* v. *NLRB* (1973) 414 U.S. 168 [38 L.Ed.2d 388, 94 S.Ct. 414]. The scope of the National Labor Relations Board's remedial authority was limited by the NLRA to " 'any *person* [who] has engaged in . . . any such unfair labor practice,' " (*id.* at p. 175) suggesting that orders could not extend to a successor entity not actually involved in the unfair practice. It was also argued that rule 65(d) of the Federal Rules of Civil Procedure (28 U.S.C.) barred enforcement of an order against bona fide successors.[2] The Supreme Court dismissed both objections, holding that National Labor Relation Board orders could extend to bona fide successors of the culpable entity. The court noted the restrictions imposed by rule 65(d) on orders against nonparties " 'is derived from the common-law doctrine that a decree

---

[2]Rule 65(d) provided injunctions and restraining orders shall be "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control.'" (414 U.S., *supra*, at pp. 179-180 [38 L.Ed.2d at pp. 399-400].)

Though we recognize the policies underlying the NLRA and title VII differ in important respects from those controlling the Workers' Compensation Act, the justification for applying successor liability in appropriate cases is the same—failure to do so would effectively undermine the remedies provided, particularly the remedy of reinstatement. The present case illustrates the misfortune which can result. Applicant's nominal employer was Yuba Sutter, the management company that hired her. Yuba Sutter is now defunct and Forest Place, determined by the Board to be the legal employer when the discriminatory acts took place, asserts it is not an employer; control of the existing work force rests with Superior Care, a stranger to earlier transactions. While Forest Place remains responsible for monetary relief, it is possible, depending on the terms of the management agreement between Superior and Forest Care, that only Superior Care can provide reinstatement.

We therefore conclude that under appropriate circumstances, a successor entity may be held liable for the remedies provided in Labor Code section 132a. Like the court in *MacMillan*, we reject a blanket application of the successor doctrine; liability must be determined on a case by case basis. As our Supreme Court has recognized in a different context, "[N]o single, mechanical formula can be devised to resolve all successorship issues." (*San Clemente Ranch, Ltd.* v. *Agricultural Labor Relations Bd., supra,* 29 Cal.3d at p. 885.) The workers' compensation judge erroneously concluded that a successor entity always succeeds to its predecessor's obligations under section 132a. There is no justification for imposing such a burden without proof of facts establishing a relationship between the successor and predecessor companies sufficient to warrant treating the latter as an extension of the former. Certainly, where the new employer is "merely a disguised continuance of the old employer," (*Southport Co.* v. *Labor Board* (1942) 315 U.S. 100, 106 [86 L.Ed. 718, 724, 62 S.Ct. 452]) or where the transfer is simply a means of evading the judgment (*Regal Knitwear Co.* v. *Board* (1945) 324 U.S. 9, 14 [89 L.Ed. 661, 666, 65 S.Ct. 478]) the federal courts have not hesitated to bind successor employers. Nor should we. However, liability should not be limited to nefarious transfers.

"Courts that have considered the successorship question in a labor context have found a multiplicity of factors to be relevant. These include: 1) whether

the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product. [Citations.]" (*Equal Emp. Op. Com'n.* v. *MacMillan Bloedel Containers, Inc., supra,* 503 F.2d 1086, 1094.)

The requirement of notice is important in assessing the successor's monetary liability. "Since the successor must have notice before liability can be imposed, 'his potential liability for remedying the unfair labor practices is a matter which can be reflected in the price he pays for the business, or he may secure an indemnity clause . . . which will indemnify him for liability . . . .' " (*Golden State Bottling Co.* v. *NLRB, supra,* 414 U.S. at p. 185 [38 L.Ed.2d at p. 403].) The same considerations do not apply where relief is limited to reinstatement and no monetary remedies (increased compensation, back pay and benefits) are provided. Assuming no significant change in the work force, an order to reinstate a qualified worker to the worker's former position under new management will ordinarily impose only a slight burden on the new employer.

The distinction between monetary remedies and the remedy of reinstatement should be considered in implementing remedies for retaliatory discharge under Labor Code section 132a. ■ Thus, in our view, the imposition of monetary remedies on a successor entity requires proof of the following: 1) there has been a substantial continuity of the former business enterprise, with substantially the same job classifications and work force; 2) the successor took over the enterprise with notice of the Labor Code section 132a claim or facts giving rise to such a claim; and 3) the successor has been provided with notice of the Board proceedings and afforded an opportunity to contest liability.

Because reinstatement does not have the same consequences as monetary remedies, the remedy can be imposed even if the successor was unaware of a possible Labor Code section 132a claim at the time of the change in ownership or management. Nevertheless, the first and third factors must be established.

■ Only one of the these factors appears in the record of the present case. As earlier indicated, Superior Care was provided with notice of the

Board proceedings and actively participated in them. However, the record discloses no details regarding the terms or circumstances under which Superior Care succeeded to the management functions previously performed by Yuba Sutter. While applicant asserts Superior Care knew of her pending claim, her assertion is without support in the record. The evidence presented at the hearing focused on Forest Hill because Superior Care was not joined as a party until later. Thereafter, no additional evidence was received. Thus, details regarding the composition of the prior and existing work forces and business operations were not provided to the workers' compensation judge. The record therefore does not support the Board's conclusion that Superior Care as the next management company would be responsible for compliance with any order to reinstate and payback benefits.

### B. *Agency Liability*

■ Apart from possible liability as Yuba Sutter's successor, Superior Care may be liable for Labor Code section 132a remedies by virtue of its relationship with Forest Place. Under the common law, an injunction binds not only the defendant but also servants or agents and those in collusion with the defendant. (*Berger* v. *Superior Court* (1917) 175 Cal. 719 [167 P. 143, 15 A.L.R. 373]; *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 907 [141 Cal.Rptr. 133, 569 P.2d 727].) It would seem, therefore, that an order of reinstatement, being comparable to a mandatory injunction, should extend not only to Forest Place but to parties who are controlled by or in collusion with Forest Place. While we are aware of no California authority directly on point, federal labor decisions support this analysis. Under federal labor and civil rights decisions, an entity that is not an employer in fact has been treated as such when its operations are functionally integrated with those of the employer. (*Trevino* v. *Celanese Corp.* (5th Cir. 1983) 701 F.2d 397.) Under this reasoning, if it can be demonstrated that Superior Care is merely an extension of Forest Place, an order of reinstatement would bind both. Even when the operations of two companies are not functionally integrated, the exercise of day-to-day control over the hiring, discipline, discharge and work assignments has supported the imposition of joint responsibility. (*E.E.O.C.* v. *Sage Realty Corp., Inc.* (S.D.N.Y. 1980) 87 F.R.D. 365.)

Without citing these authorities, applicant appears to embrace the underlying reasoning. She suggests Forest Place and Superior Care are engaged in

a "shell game";[3] the apparent division of responsibility between them is a transparent effort to avoid responsibility to applicant. The workers' compensation judge accepted this reasoning. Following the rehearing the judge concluded: "It would appear that at the time in question, both Forest Place itself, and its management corporation would be liable for a violation of L.C. [Labor Code] 132a (wrongful termination) and that the employment was with and for the benefit of Forest Place, and thus the principle [sic] employer, Yuba Sutter being the managing agency of the facility, would also be liable for any act of wrongful termination, jointly and severally." Yuba Sutter was thus liable as the "managing agency" for the facility. The subsequent change in management companies changed nothing. According to the judge, "It does not appear that there has been any substantial change in the employer, only in the organizational structure, and thus the liability would remain with the facility, and they would be the responsible and liable party for acts of Forest Place in June 1989." The judge held Superior Care was liable as the successor to Yuba Sutter, a point discussed above, but also appeared to premise liability on Superior Care's role as Forest Place's management arm: "It appears that Forest Place is capable of responding either in its own capacity or through it [sic] management facility to any judgment authorized under L.C. [Labor Code] 132a." In effect, the judge reasoned, Forest Place could order Superior Care to reinstate applicant; thus, the Board can order Superior Care to reinstate and reimburse for lost wages as well.

Again, however, the findings are not supported by the record. The workers' compensation judge apparently reasoned that if Forest Place and Yuba Sutter were the "violating parties" in the first instance, and Superior Care replaced Yuba, then Forest Place and Superior Care were thereafter the responsible parties. The record, however, reveals little about the relationship between Forest Place and Yuba Sutter and even less about the relationship between Forest Place and Superior Care. A conclusion there has been no "substantial change" in employers therefore rests on supposition. The judge's suggestion that Forest Place controls Superior Care's personnel decisions is similarly without foundation. The terms of Superior Care's management contract with Forest Place and the extent to which Superior Care employees are subject to the control of Forest Place are not mentioned in the record.

Ordinarily, error by the Board in the conclusions reached following a hearing requires reversal but does not warrant a remand to permit the

---

[3]Any hope that Forest Place could escape liability through a legalistic "shell game" has been quashed with our earlier conclusion that Forest Place is the employer and is thus bound by the Board's order.

introduction of additional evidence. Here, however, it appears the workers' compensation judge proceeded under a misapprehension of law and misdirected the inquiry following the Board's grant of reconsideration. Instead of a hearing directed at determining the relationship between the applicant and the three putative employers, the judge merely requested briefing on the issue of successor liability. The misapprehension is perhaps understandable given the paucity of legal authority on these issues. Nevertheless, the fact remains the parties were not afforded the opportunity to adequately develop the record.

### Disposition

Accordingly, the order is annulled insofar as it holds Superior Care liable for backpay and reinstatement but is affirmed as to Forest Place. The matter is remanded for further hearing on Superior Care's liability as the successor to Yuba Sutter or as an agent of Forest Place, consistent with the views expressed herein.

Sims, Acting P. J., and Davis, J., concurred.