[No. B233915. Second Dist., Div. Five. May 16, 2012.]

THE PEOPLE ex rel. KAMALA D. HARRIS, as Attorney General, etc.,
Plaintiff and Respondent, v.
SUNSET CAR WASH, LLC, Defendant and Appellant.

## COUNSEL

Law Offices of Steven C. Kim and Steven C. Kim for Defendant and Appellant.

Kamala D. Harris, Attorney General, Martin Goyette, Assistant Attorney General, Jon M. Ichinaga and Satoshi Yanai, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—Labor Code section 2050[1] et seq. established a regulatory scheme for carwash operators, motivated by a legislative concern that carwash employees were not being paid in accordance with law. One component of the statutory scheme—section 2066—imposes liability upon a "successor" to a carwash employer for unpaid wages and penalties owed by a predecessor employer in four circumstances, including where the successor uses the same facilities to perform substantially the same services as the predecessor. We hold that the four circumstances of liability set forth in section 2066 determine the meaning of "successor," and there is no need to look to other statutes and case law to further define the term. We further hold that imposition of liability against a successor who operates at the same location as a predecessor carwash employer does not constitute a violation of due process.

## BACKGROUND

Plaintiff and respondent The People of the State of California ex rel. Kamala D. Harris, as Attorney General, filed an action against defendant and appellant Sunset Car Wash, LLC, seeking to recover unpaid wages and penalties owed by defendant Auto Spa Express, Inc. (Auto Spa),[2] which had operated a carwash at the same location before being evicted by the property owner, Sunset Alvarado Investors, LLC. In denying a motion for summary judgment filed by Sunset Car Wash, the trial court ruled that Sunset Car Wash was a successor to Auto Spa as defined in section 2066, because it operated at the same location and performed the same services. Based on the court's ruling, the People and Sunset Car Wash agreed to entry of a judgment in favor of the People in the amount of $120,000. Execution of the judgment was stayed pending an appeal by Sunset Car Wash on two issues—whether

[1] Statutory references are to the Labor Code, unless otherwise stated.

[2] Auto Spa and another named defendant, Jonathan Min Kim, are not parties to this appeal.

Sunset Car Wash was a successor for purposes of section 2066, and if liability violates due process of law.

## FACTS

The facts are undisputed and may be briefly stated. Auto Spa operated a carwash on Sunset Boulevard in Los Angeles. Sunset Alvarado Investors, which held a note secured by a trust deed on the Sunset Boulevard property, foreclosed on the property, evicted Auto Spa, and leased the same premises to Sunset Car Wash. Auto Spa had failed to pay minimum wage and overtime to its employees and denied paid rest breaks. The People brought this action to hold Sunset Car Wash liable for the wages and penalties owed by Auto Spa.

## DISCUSSION

Sunset Car Wash contends section 2066 does not apply to its operation, because it is not a "successor" for purposes of the statute. It argues statutes are not construed in isolation, and "successor" under section 2066 should be defined by reference to court-established definitions of the word, citing to the discussions of "successor" in *Ray v. Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3] (*Alad Corp.*) and *Superior Care Facilities v. Workers' Comp. Appeals Bd.* (1994) 27 Cal.App.4th 1015 [32 Cal.Rptr.2d 918] (*Superior Care*). The People argue that section 2066 contains a self-executing definition of "successor" in the four categories of liability set forth in the statute and resort to external definitions would render "successor" mere surplusage.

*Section 2066*

The Legislature was motivated to regulate the carwash industry in 2003 by its findings that operators employed practices that sometimes resulted in violation of the state's labor laws, and other attempts to enforce the law had proven ineffective. (Historical and Statutory Notes, 44C West's Ann. Lab. Code (2011 ed.) foll. § 2066, p. 21.) The regulatory scheme established " 'a system of registration, bonding requirements, and enforcement to impose prompt and effective civil sanctions for the violation of the provisions set forth in this act or any provision of law applicable to the employment of workers in the car washing and polishing industry.' " (Historical and Statutory Notes, 44C West's Ann. Lab. Code, *supra*, foll. § 2050, p. 8.) The provision of the scheme at issue here, section 2066, provides as follows:

"A successor to any employer that is engaged in car washing and polishing that owed wages and penalties to the predecessor's former employee or employees is liable for those wages and penalties if the successor meets any of the following criteria:

"(a) Uses substantially the same facilities or workforce to offer substantially the same services as the predecessor employer.

"(b) Shares in the ownership, management, control of the labor relations, or interrelations of business operations with the predecessor employer.

"(c) Employs in a managerial capacity any person who directly or indirectly controlled the wages, hours, or working conditions of the affected employees of the predecessor employer.

"(d) Is an immediate family member of any owner, partner, officer, or director of the predecessor employer of any person who had a financial interest in the predecessor employer."

*Standard of Review*

■ The rules of statutory interpretation are well settled. The goal of interpretation is to determine legislative intent in order to carry out the law's purpose. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882] (*Olson*); *Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118] (*Green*).) We begin our analysis by examination of the language of the statute. (*Olson, supra,* at p. 1147; *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 507 [66 Cal.Rptr.3d 52, 167 P.3d 666] (*Beal Bank*).) "The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent." (*Green, supra,* at p. 260, citing *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) However, if the statutory language is ambiguous, additional sources of information are consulted to determine the Legislature's intent. (*Olson, supra,* at p. 1147; *Beal Bank, supra,* at p. 508.)

*Interpretation of Successor Liability Under Section 2066*

We agree with the trial court that the plain meaning of "successor" for purposes of section 2066 is any entity defined in the four statutory clauses establishing successor liability for unpaid wages and penalties owed by a predecessor operator of a carwash. Because the statutory language is clear on its face, there is no need to look beyond the language of section 2066 to establish the intent of the Legislature.

Sunset Car Wash is unable to identify any language in section 2066 demonstrating the Legislature intended "successor" to mean anything other

than an employer defined in subdivisions (a) through (d) of the statute. Instead, Sunset Car Wash points to *Alad Corp., supra,* 19 Cal.3d 22 and *Superior Care, supra,* 27 Cal.App.4th 1015 to support a definition of "successor" to be read into section 2066.

The attempt to draw upon the definitions of "successor" in *Alad Corp.* and *Superior Care* fails. Neither case has anything to do with the meaning of "successor" in section 2066. *Alad Corp.* was a products liability case, while *Superior Care* fell under the workers' compensation law. (*Alad Corp., supra,* 19 Cal.3d at pp. 24–25; *Superior Care, supra,* 27 Cal.App.4th at pp. 1019–1023.)

Moreover, because the two cases Sunset Car Wash relies upon arise in entirely different contexts, they do not settle upon a single definition of "successor." *Alad Corp.* identifies four factors typically applied to determine whether a corporation purchasing all the assets of a predecessor assumes its liabilities. (*Alad Corp., supra,* 19 Cal.3d at p. 28.) "As typically formulated the rule states that the purchaser does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. [Citations.]" (*Ibid.*)

*Superior Care* identified nine relevant factors in determining successorship in the labor context, and further identified three factors that must be proved as a condition of imposition of monetary remedies on a successor under the workers' compensation law. (*Superior Care, supra,* 27 Cal.App.4th at pp. 1027–1028.) "Thus, in our view, the imposition of monetary remedies on a successor entity requires proof of the following: 1) there has been a substantial continuity of the former business enterprise, with substantially the same job classifications and work force; 2) the successor took over the enterprise with notice of the . . . section 132a claim or facts giving rise to such a claim; and 3) the successor has been provided with notice of the Board proceedings and afforded an opportunity to contest liability." (*Id.* at p. 1028.)

█ Section 2066 incorporates none of the elements of successorship in *Alad Corp.* and only one from *Superior Care*'s determination of the requirements for imposition of monetary damages—substantial continuity of the former business enterprise. Having expressly set forth the circumstances in which a successor is liable for labor law violations by a predecessor car wash employer, there is no reason to look to the law of corporate succession as defined in *Alad Corp.* or interpretation of the workers' compensation law in *Superior Care* in order to determine liability in the discrete area of labor law covered by section 2066.

We agree with the People that reliance on external definitions of "successor" would defeat the purpose of section 2066. The statute sets forth the circumstances in which a successor is liable for a predecessor carwash employer's conduct, identifying four different categories. Requiring separate proof of successorship, as defined in entirely unrelated areas, would render meaningless the conditions for liability set forth in subdivisions (a) through (d) of the statute.[3]

Sunset Car Wash cites to the following comment of the final bill analysis of section 2050 et seq.:

"Supporters believe this bill provides an effective means for ensuring payment of wages by establishing a registration and bond system to ensure that workers can obtain their wages promptly when the employer does not pay the required wages or illegally uses tips to credit the workers' wages. . . . This bill establishes a system similar to the one that exists in other industries, particularly the garment industry." (Assem. Conc. Sen. Amends. to Assem. Bill No. 1688 (2003–2004 Reg. Sess.) as amended Sept. 8, 2003, p. 4.)

Sunset Car Wash argues that, based on the above comment, the statement of legislative intent below in section 2684, subdivision (a), pertaining to the garment industry, should therefore be equally applicable to section 2066: "a) The Legislature finds and declares that persons who are primarily engaged in sewing or assembly of garments for other persons engaged in garment manufacturing frequently close down their sewing shops to avoid paying their employees' wages and subsequently reopen under the conditions described in subdivision (b), and are more likely to do so than are other types of persons engaged in garment manufacturing." (§ 2684, subd. (a).)

We reject the argument for four reasons. First, the plain language of section 2066 dictates its meaning and resort to the legislative intents of sections 2066 and 2684 is unnecessary and improper. Second, the assembly comment does not contain any reflection of legislative intent. Instead, it indicates what "[s]upporters believe" the bill accomplishes. Statements of the beliefs of "supporters" of a bill are just that—the opinion of some unidentified group that does not reflect legislative intent. Third, the statement in the assembly comment does not even relate to section 2066, which involves successor liability; instead, it refers to those portions of the legislative scheme "establishing a registration and bond system to ensure that workers can obtain their

---

[3] For this reason, there is no merit to the argument that Sunset Car Wash cannot be a successor because the foreclosure by Sunset Alvarado of Auto Spa's interest extinguished all interests. We agree with the trial court that the fact of foreclosure is irrelevant. The only issue is whether Sunset Car Wash is an entity described in subdivisions (a) through (d) of section 2066.

wages promptly . . . ." (Assem. Conc. Sen. Amends. to Assem. Bill No. 1688 (2003–2004 Reg. Sess.) as amended Sept. 8, 2003, p. 4.) Thus, the comment pertains to other provisions of the regulations applicable to the car washing industry and not to the successorship language found in section 2066. Fourth, section 2066, as well as the balance of the statutory scheme regulating the carwash industry, contains no statement of legislative intent similar to that in section 2684, and there is no reason to attribute a statement pertaining to another statutory scheme to section 2066.

Sunset Car Wash argues, in support of its statutory interpretation of section 2066, that no entity would take over an existing car washing business if, in doing so, the entity would be potentially liable for wage law violations that it could not discover, such as here, where Auto Spa is out of business and its records are not available for study. The assertion is entirely speculative, as there is nothing in the record to support a finding that the frequency of transactions resulting in a change of car washing operators has been affected in any way by the regulation of the industry. Assuming Sunset Car Wash is correct that the result of regulation will be fewer car washing establishments and less employment due to the uncertainty over liability for labor law violations by predecessor employers, that concern is for the Legislature, but it plays no role in our task of determining the plain meaning of section 2066.

■ It is undisputed that Sunset Car Wash falls within the definition of successor in subdivision (a) of section 2066, in that Sunset Car Wash uses substantially the same facilities and offers substantially the same services as Auto Spa. Substantial evidence therefore supports the trial court's finding that Sunset Car Wash is liable as the successor to Auto Spa for the predecessor's labor law violations under section 2066.

*Due Process Notice*

Again relying on the discussion in *Superior Care, supra,* 27 Cal.App.4th at pages 1027–1028, Sunset Car Wash argues section 2066 violates due process unless it is interpreted to require "prior notice" of monetary liabilities. Sunset Car Wash argues application of section 2066 in this case violates due process because it did not purchase the carwash from Auto Spa and it had no notice, actual or constructive, of the wage claims owed by Auto Spa.

As discussed above, the holding in *Superior Care* was in the context of workers' compensation law. The court was called upon to determine issues of successor liability in the absence of a clear legislative directive in that legislative scheme. Here, in contrast, the Legislature has specifically delineated the circumstances of successor liability in the car washing industry, and there is no need to resort to the analysis required in *Superior Care.*

■ In the context of the car washing industry, section 2066 provides the necessary notice of the potential for successor liability for labor law violations. Any entity commencing business in the industry is presumptively aware of the requirements of section 2050 et seq. " 'California law attributes to all citizens constructive knowledge of the content of state statutes. . . .' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 501 [97 Cal.Rptr.2d 334, 2 P.3d 581].) Presumptively aware of the potential for liability, a person or entity considering commencing a car washing business is placed on notice in section 2066 of the liability potential and may protect itself by the exercise of due diligence, indemnity agreements, or insurance.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiff and respondent The People ex rel. Kamala D. Harris.

Turner, P. J., concurred.

**ARMSTRONG, J.,** Dissenting.—I respectfully dissent.

The following facts are undisputed: Auto Spa Express, Inc. (Auto Spa), owned and operated a carwash business at 2028 Sunset Boulevard, a parcel of real property which it owned subject to a deed of trust securing a loan; Auto Spa owed wages and Labor Code penalties to its employees; Auto Spa defaulted on its secured loan; the noteholder conducted a nonjudicial foreclosure sale at which it purchased the property at 2028 Sunset Boulevard; Auto Spa was evicted from the property and ceased doing business;[1] the new owner of 2028 Sunset Boulevard leased the premises to Sunset Car Wash, LLC (Sunset), an entity unaffiliated with, and in fact a stranger to, Auto Spa; Sunset opened a new carwash business under its corporate name at 2028 Sunset Boulevard. Relying on the dictionary definition of a "successor" as "one that follows" (Merriam-Webster Online Dict. <http://www.merriam-webster.com> [as of May 16, 2012]) the Attorney General contends that pursuant to Labor Code section 2066, Sunset incurred successor liability for Auto Spa's Labor Code violations because it operated its new carwash on the same business premises previously used by Auto Spa. This simple analysis not only violates the precepts of statutory interpretation and misapprehends the legislative intent behind the statute, but results in a gross injustice to Sunset, which has fully complied with its Labor Code obligations as a carwash operator.

---

[1] Although not an "undisputed fact," the record contains no evidence that Auto Spa's carwash business owned any assets other than the real property on which the business was conducted, or that Auto Spa sold, assigned, or transferred its assets, stock or business to any person or entity.

Labor Code section 2066 (hereafter, section 2066) imposes liability on (1) a successor to a carwash employer, (2) which owes wages and penalties to its employees, (3) *if* the successor fits one of four enumerated categories. As noted, it is undisputed that Auto Spa was a carwash employer which owed wages and penalties to its former employees. Thus, if Auto Spa sold, assigned, or transferred its *business*—that is, if any person or entity succeeded to Auto Spa's carwash *business*—the purchaser, assignee or transferee would be subject to liability for Auto Spa's wage and penalty obligations if he, she, or it met one of the criteria set forth in subdivisions (a) through (d) of the statute. However, because no person or entity succeeded to Auto Spa's business, section 2066 does not come into play.

The majority concludes that subdivisions (a) through (d) of section 2066 provide four discrete definitions of the term "successor." If true, the Legislature enacted a statute mandating either that (1) a successor is liable for the prior carwash employer's wage and penalty obligations if it is a successor (a nonsense sentence), or (2) all the world is liable for the prior carwash employer's wage and penalty debt if he, she or it "(a) Uses substantially the same facilities or workforce to offer substantially the same services as the predecessor employer. [¶] (b) Shares in the ownership, management, control of the labor relations, or interrelations of business operations with the predecessor employer. [¶] (c) Employs in a managerial capacity any person who directly or indirectly controlled the wages, hours, or working conditions of the affected employees of the predecessor employer. [¶] (d) Is an immediate family member of any owner, partner, officer, or director of the predecessor employer of any person who had a financial interest in the predecessor employer." (§ 2066.) Under the latter interpretation, because subdivision (d) contains a definition of "successor," all of the immediate family members— that is, the "spouse, domestic partner, cohabitant, child, stepchild, grandchild, parent, stepparent, mother-in-law, father-in-law, son-in-law, daughter-in-law, grandparent, great grandparent, brother, sister, half-brother, half-sister, step-sibling, brother-in-law, sister-in-law, aunt, uncle, niece, nephew, or first cousin" (Cal. Code Regs., tit. 8, § 13692)—of the officers, directors and shareholders of Auto Spa are liable for the corporation's wage and penalty obligations, even though they had nothing to do with the operation of the carwash in the past, present or future. Likewise, under subdivision (c) of the statute, any current or future employer of any Auto Spa manager who directly controlled the wages, hours, or working conditions of the carwash's employees is liable for Auto Spa's obligations, even if the former Auto Spa manager is hired to work in a completely different industry, and the subsequent employer has no knowledge that its employee once worked for a carwash. I am confident that, in adopting section 2066, the Legislature composed sentences that make sense in order to achieve some public good, not nonsense sentences or those which mandate the absurd result that a carwash owner's

minor children, grandma and cousin (not to mention roommate) are responsible for their deadbeat relative's debts.

Clearly, only *certain successors* are liable for the predecessor's debt, to wit: those who fall within one of the four subdivisions. Because Sunset received nothing from Auto Spa—neither its business as a going concern, nor its assets, nor its stock nor any other ownership interest—by definition it is not Auto Spa's successor. And because it is not Auto Spa's successor, it has no liability under the statute regardless of whether it would fall into one of the categories contained in subdivisions (a) through (d) of section 2066 if it were a successor.

The only connection between Auto Spa and Sunset is that the two separate companies conducted their unaffiliated carwash businesses on the same physical premises. That is to say, Sunset was a successor tenant of the real property on which Auto Spa operated its business. However, the fact that two business entities happened to have sequentially occupied real estate on which they operated separate and unaffiliated businesses does not create a relationship between them of predecessor and successor. If section 2066 were intended to impose liability in this situation, it would begin "A successor to any owner/occupier of real property containing a carwash facility." Instead, the statute specifies that it applies only to the successor *to the carwash employer*. The real estate on which Auto Spa's business was located did not employ anyone.

Lastly, the majority states a holding of this case to be "that imposition of liability against a successor who operates at the same location as a predecessor carwash employer does not constitute a violation of due process." (Maj. opn., *ante*, at p. 1435.) I agree that there is no due process problem if a *successor* to the employer incurs liability based on its operation of the carwash business at the same location. What the majority sanctions in this case, however, is imposition of liability[2] not upon a successor but upon a stranger to Auto Spa; that does indeed strike at the heart of Sunset's due process rights, something I believe that, in enacting section 2066, the Legislature had no intention of doing.

In sum, a straightforward, commonsense reading of section 2066 leads me to conclude that the Legislature intended to impose "successor liability" on those who acquire, by purchase, inheritance or other means, the carwash business of an employer which owes wages and penalties to its employees— even if such liability would not attach under the traditional analysis of

---

[2] The stipulated judgment affirmed by the majority set Sunset's liability at $120,000. The complaint sought an award against Sunset in the amount of $730,000.

successor liability as set forth in *Ray v. Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3] and similar cases—when one of four enumerated circumstances is present. This reading of the statute comports with the plain meaning of the words the Legislature chose to use, gives meaning to each word and phrase appearing therein and, contrary to the majority's analysis, constitutes a reasonable method of addressing the particular problem of carwash employees whose employer violates the Labor Code.

Appellant's petition for review by the Supreme Court was denied July 25, 2012, S203480. Baxter, J., was of the opinion that the petition should be granted.