[No. S143999. Feb. 28, 2008.]

CARL OLSON et al., Plaintiffs and Appellants, v.
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Defendant and
Appellant.

## COUNSEL

Law Office of Thomas K. Bourke, Thomas K. Bourke, Rizwan R. Ramji; Law Office of Lorraine L. Loder, Lorraine L. Loder; Law Office of Richard M. Pearl and Richard M. Pearl for Plaintiffs and Appellants.

Brad Seligman, Julia Campins, Edith Matthai; David Blair-Loy; Peter Eliasberg; Alan Schlosser; Ken Kresse; Luke W. Cole; Linda Kilb; Irma Herrera; Adrienne Bloch; Trent Orr; David Greene; Alan Ramo; Luz Buitrago; Matthew Goldberg; Marci Seville; Julia R. Wilson; Richard Rothschild; John O'Toole, Dara Schur; Lisa Jaskol; Michael Wall; John Affeldt; Kyra Kazantzis; Michael Rawson; and Alice Bussiere for The Impact Fund, Los Angeles County Bar Association, American Civil Liberties Union, California Center for Law and the Deaf, Center on Race, Poverty & the Environment, Communities for Better Environment, Disability Rights Education and Defense Fund, Disability Rights Legal Center—Civil Rights Litigation Project, Earthjustice, Equal Rights Advocates, First Amendment Project, Golden Gate University School of Law—Environmental Law and Justice Clinic, Law Center for Families, Law Foundation of Silicon Valley, Legal Aid Association of California, Legal Aid Society—Employment Law Center, National Center for Youth Law, Natural Resources Defense Council, Protection and Advocacy, Inc., Public Advocates, Public Counsel, Public Interest Law Project, Western Center on Law and Poverty, Women's Employment Rights Clinic of Golden Gate University School of Law and Youth Law Center as Amici Curiae on behalf of Plaintiffs and Appellants.

The Sturdevant Law Firm, James C. Sturdevant and Mark T. Johnson for National Association of Consumer Advocates as Amicus Curiae on behalf of Plaintiffs and Appellants.

Steven G. Ingram for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Morrison & Foerster, Charles E. Patterson, John Sobieski, Howard B. Soloway and Phillip Bronson for Defendant and Appellant.

---

OPINION

**MORENO, J.**—Code of Civil Procedure section 1021.5 provides, in pertinent part, that "[u]pon motion, a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if . . . a significant benefit . . . has been conferred on the general public . . . ." We granted review in this matter to decide whether, under this statute, a prevailing plaintiff who is awarded attorney fees is also entitled to recover expert witness fees. In *Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436 [71 Cal.Rptr.2d 452, 950 P.2d 567] (*Davis*), we considered a similar issue, and concluded that Government Code section 12965, former subdivision (b), which then provided for an award of " 'reasonable attorney fees and costs' " to a prevailing party, did not permit an award of expert witness fees. (*Davis, supra,* 17 Cal.4th at pp. 438, 446; see Gov. Code, § 12965, former subd. (b), as amended by Stats. 1992, ch. 912, § 7.1, p. 4276.) Consistent with *Davis* and the plain language of the statute, we hold that a prevailing plaintiff is not entitled to an award of expert witness fees in addition to attorney fees under Code of Civil Procedure section 1021.5.

FACTS

Plaintiffs Carl Olson and Mark Seidenberg sued defendant Automobile Club of Southern California (Automobile Club), a nonprofit mutual benefit corporation, primarily seeking various reforms to the Automobile Club's procedures for electing its board of directors. Plaintiffs retained three experts to prove certain aspects of their case in a trial that lasted 24 days and included almost 1,000 exhibits.

Plaintiffs prevailed on several of their electoral process claims and obtained a judgment mandating a number of election reforms. The trial court declared plaintiffs to be the successful parties under Code of Civil Procedure section 1021.5.[1] The trial court awarded attorney fees and expert witness fees to plaintiffs based upon their election cause of action, concluding that plaintiffs achieved "an election reform of significant benefit regarding the ability of the candidates to communicate to the [Automobile Club's] members and the members to choose among the candidates." The trial court also stated that "the Judgment and Statement of Decision, and other aspects of the litigation, provide some guidance for the future and therefore are likely to have a catalytic effect." Plaintiffs were awarded a total of nearly $1.1 million in attorney fees and $90,466.85 in expert witness fees pursuant to section 1021.5.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

The Court of Appeal concluded that section 1021.5 did not authorize an award of expert witness fees, and modified that portion of the trial court's judgment. We granted review to decide whether, under section 1021.5, a prevailing plaintiff who is awarded attorney fees is also entitled to an award of expert witness fees.

### DISCUSSION

■ Section 1021.5 provides, in pertinent part, that "[u]pon motion, a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if . . . a significant benefit . . . has been conferred on the general public . . . ." Section 1021.5 is one of many "statutory exceptions" that authorize a trial court to deviate from the generally applicable " 'American rule' " that each party bears its own costs and attorney fees. (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1257 [45 Cal.Rptr.3d 362, 137 P.3d 192].) In 1975, the United States Supreme Court clarified the limits of federal judicial discretion to alter the American rule in *Alyeska Pipeline Co. v. Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612], holding that it was the province of the legislative branch to craft exceptions to the American rule, and courts were not free to shift such costs on an ad hoc basis absent express legislative authorization. (*Id.* at pp. 269–270.) Though this court and the California Legislature are certainly not bound by federal authority, the Legislature's 1977 enactment of section 1021.5—expressly authorizing an "award [of] attorneys' fees" to a prevailing party in a private attorney general action resulting in substantial public benefit (§ 1021.5, added by Stats. 1977, ch. 1197, § 1, p. 3979)—appeared to be "in significant measure . . . an explicit reaction to the United States Supreme Court's *Alyeska* decision." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*).)

■ Plaintiffs contend that section 1021.5 authorizes an award of both attorney fees *and* expert witness fees. " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)" (*People v. Cole* (2006) 38 Cal.4th 964, 974 [44 Cal.Rptr.3d 261, 135 P.3d 669].) Statutory interpretation begins with an analysis of the statutory language. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 507 [66 Cal.Rptr.3d 52, 167 P.3d 666].) "If the statute's text evinces an unmistakable plain meaning, we need go no further." (*Id.* at p. 508.) If the statute's language is ambiguous, we examine additional sources of information to determine the Legislature's intent in drafting the statute. (*Ibid.*; *People v. Cole, supra*, 38 Cal.4th at p. 975.) Here, neither the

language nor the legislative history of section 1021.5 demonstrates that the statute permits an award of expert witness fees.

██ The plain language of section 1021.5 authorizes an "award [of] attorneys' fees" to a prevailing party. The statute is silent with respect to expert witness fees. The Legislature's omission of expert witness fees from the statutory language is notable in light of the numerous statutes that *expressly* include language regarding expert witness fees.[2] The plain language of section 1021.5 does not indicate an intent to authorize an award of expert witness fees. Indeed, expert witness fees are not typically considered a subset of attorney fees; rather, attorney fees and expert witness fees are viewed as distinct and independent subsets of the costs of litigation. (See § 1033.5, subds. (a)(10), (b)(1).)

We reached a similar conclusion in *Davis,* holding that a statute expressly authorizing an award of attorney fees to a prevailing party did not also authorize an award of expert witness fees. (*Davis, supra,* 17 Cal.4th at p. 446.) In *Davis,* we considered whether Government Code section 12965, former subdivision (b), authorized an award of expert fees under a statutory provision providing that a prevailing party was entitled to receive " 'reasonable attorney fees and costs.' " (*Davis, supra,* 17 Cal.4th at p. 438; see Gov. Code, § 12965, former subd. (b), as amended by Stats. 1992, ch. 912, § 7.1, p. 4276.)

██ In *Davis,* we explained that the " 'costs' of a civil action consist of the expenses of litigation, usually excluding attorney fees. Under the common law rule, parties to litigation must bear their own costs. The right to recover any of such costs is determined entirely by statute." (*Davis, supra,* 17 Cal.4th at p. 439.) As we described in *Davis,* section 1033.5 is such a statute, describing the manner in which costs may be awarded to a prevailing party. (17 Cal.4th at p. 441.) Section 1033.5 describes three types of costs: (1) subdivision (a) describes items allowable as costs to a prevailing party

---

[2] (See Bus. & Prof. Code, §§ 3753.7, 6086.10, subd. (d), 7085.5, subd. (u); Civ. Code, §§ 52.5, subd. (f), 987, subd. (e)(4), 989, subd. (f)(1), 1739.7, subd. (g), 1745, subd. (d), 3333.5, subd. (d); Code Civ. Proc., §§ 998, subds. (c)(1), (d), 1021.8, subd. (a), 1038, subd. (b), 1141.21, subd. (a)(1)(C), 1235.140, subd. (b), 1250.410, subd. (e), 1250.420, subd. (c)(2), 1273.020, subds. (a), (b), 1273.040, subd. (b), 2034.440, 2034.450, 2034.470, subds. (a), (e), (f), (g); Corp. Code, §§ 1305, subd. (e), 15679.7, subd. (e), 15911.26, subd. (e), 17606, subd. (e); Elec. Code, § 14030; Fam. Code, §§ 7557, 7640; Fish & G. Code, § 2125, subd. (c); Food & Agr. Code, §§ 24012, subd. (c), 55722.5, subd. (f), 56382.5, subd. (f), 56382.8, subd. (g)(11); Gov. Code, §§ 8670.56.5, subd. (f), 12598, subd. (b), 12965, subd. (b), 12987, subd. (a)(3), 12989.2, subd. (a), 12989.3, subd. (g), 77204, subd. (b); Harb. & Nav. Code, § 294, subd. (e); Health & Saf. Code, §§ 14955, subd. (f), 19958.6, subd. (e)(1), (3), 25395.84; Ins. Code, § 11580.9, subd. (g)(2); Pen. Code, §§ 423.4, subd. (a), 4751, subd. (b); Prob. Code, § 1963, subd. (c); Pub. Resources Code, §§ 14591.3, 14591.6, subd. (d); Pub. Util. Code, §§ 1801, 1802, subds. (a), (c), (g), (i), 1803; Rev. & Tax. Code, § 30165.1, subd. (p); Sts. & Hy. Code, § 730.5.)

under section 1032;[3] (2) subdivision (b) describes items "not allowable as costs, except when expressly authorized by law"; and (3) subdivision (c)(4) describes items that "may be allowed or denied in the court's discretion" if not enumerated in subdivisions (a) and (b). Pursuant to subdivision (a)(10), attorney fees are allowable as costs if authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10)(A)–(C).) Pursuant to subdivision (b)(1), fees of expert witnesses not ordered by the court (see § 1033.5, subd. (a)(8)) are not allowable as costs unless "expressly authorized by law." (§ 1033.5, subd. (b)(1).)

In *Davis*, following our examination of section 1033.5, subdivision (b)(1) and decisional authority prior to the passage of that statute, we concluded that "the fees of experts not ordered by the court were not an item of allowable costs" because such fees were not expressly authorized by law. (*Davis, supra*, 17 Cal.4th at p. 442.) We noted that, pursuant to section 1033.5, if an award of expert witness fees is not expressly authorized, "the trial court's discretion . . . is limited to determining whether any allowable costs were 'reasonably necessary' and 'reasonable in amount' [citation], and to awarding or denying additional items of costs that are not mentioned as either allowable or nonallowable in . . . section 1033.5." (*Davis, supra*, 17 Cal.4th at p. 442.)[4] Because the Legislature had not elected to expressly authorize an award of expert witness fees in addition to attorney fees and costs under Government Code section 12965, former subdivision (b), we held that the statute did not authorize an award of expert witness fees. (*Davis, supra*, 17 Cal.4th at p. 442.)

The reasoning in *Davis* applies here. Section 1021.5 provides that a prevailing party may be awarded attorney fees, as did Government Code section 12965, former subdivision (b). Section 1033.5, subdivision (b)(1) provides that, unless expressly authorized by law, the fees of experts not appointed by the court are not allowable as costs. As was the case in *Davis* with respect to Government Code section 12965, former subdivision (b), nothing in the plain language of section 1021.5 suggests that the Legislature

---

[3] Section 1032 defines a prevailing party and explains that, "[e]xcept as otherwise provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subds. (a)(4), (b).)

[4] Following our decision in *Davis*, the Legislature amended Government Code section 12965, subdivision (b) to specifically provide that "the court, in its discretion, may award to the prevailing party reasonable attorneys' fees and costs, *including expert witness fees* . . . ," thereby assenting to our holding in *Davis* that an award of expert witness fees must be expressly authorized by statute. (Gov. Code, § 12965, subd. (b), as amended by Stats. 1998, ch. 931, § 183.5, eff. Sept. 28, 1998, italics added.) Indeed, it is within the Legislature's prerogative to conclude that expert witness fees should be awarded to a prevailing party bringing a private attorney general action. As in *Davis*, section 1033.5 compels us to conclude that expert witness fees may not be awarded to a prevailing party under section 1021.5 unless expressly authorized by statute.

intended to authorize an award of expert witness fees in addition to attorney fees. (*Davis, supra,* 17 Cal.4th at p. 442.) Indeed, the Legislature has amply demonstrated its ability to expressly authorize an award of expert witness fees when it so desires. (See fn. 2, *ante.*) We therefore conclude here, as we did in *Davis* with respect to Government Code section 12965, former subdivision (b), that section 1021.5 does not permit an award of expert witness fees to a prevailing party.

Plaintiffs argue that this case is distinguishable from *Davis* because there existed decisional authority prior to the enactment of section 1033.5—*La Raza Unida v. Volpe* (N.D.Cal. 1972) 57 F.R.D. 94 (*La Raza Unida*)—that expressly authorized an award of expert witness fees under a private attorney general theory. In *Davis,* we noted that the decisional authority we discussed in interpreting Government Code section 12965, former subdivision (b), which predated the enactment of section 1033.5, did not permit an award of expert witness fees. (*Davis, supra,* 17 Cal.4th at pp. 439–440.) As we noted in *Davis,* section 1033.5 was intended to restate existing law and codify case law, clarifying and collecting in one location " 'which costs are and which costs are not allowable.' (Assem. Jud. Com., 3d reading analysis of Sen. Bill No. 654 (1985–1986 Reg. Sess.) Apr. 17, 1986, p. 1.)" (*Davis, supra,* 17 Cal.4th at p. 441; see *id.* at pp. 444–445.) We stated that "nonallowable items of costs included the fees of experts not ordered by the court." (*Id.* at p. 440.) Plaintiffs here claim that because *La Raza Unida* predated the enactment of section 1033.5 and constituted "existing law" at the time section 1033.5 was enacted, section 1033.5's requirement that an award of expert witness fees be "expressly authorized" is satisfied.

Plaintiffs' argument ignores the questionable precedential authority of *La Raza Unida* at the time section 1033.5 was enacted. In *Alyeska,* the Supreme Court "rejected" the holding of *La Raza Unida,* calling into doubt the continued viability of the decision. (*West Virginia Univ. Hospitals, Inc. v. Casey* (1991) 499 U.S. 83, 97 [113 L.Ed.2d 68, 111 S.Ct. 1138] (*Casey*), legislatively reversed by the Civil Rights Act of 1991 as recognized by *Stender v. Lucky Stores, Inc.* (N.D.Cal. 1992) 780 F.Supp. 1302, 1306.) Although we have observed that the Legislature had in mind pre-*Alyeska* authority when it responded to *Alyeska* by enacting section 1021.5 (see *Woodland Hills, supra,* 23 Cal.3d at p. 934), we cannot infer similar legislative intent with respect to section 1033.5. Because *La Raza Unida* was not reliable authority when section 1033.5 was enacted, plaintiffs' contention that the award of expert witness fees was "expressly authorized" by *La Raza Unida* is incorrect. Plaintiffs cite no authority other than the *La Raza Unida* line of cases to support the contention that an award of expert witness fees under section 1021.5 is expressly authorized as required by section 1033.5. Accordingly, there appears to be no reason to interpret section 1033.5, subdivision (b)(1) as meaning anything other than what is stated by its plain

language—"[f]ees of experts not ordered by the court" are "not allowable as costs, except when expressly authorized by law."

In *Davis*, we expressly did not reach the question of whether section 1021.5 permitted an award of expert witness fees, as the Court of Appeal had held in *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1421 [1 Cal.Rptr.2d 459] (*Beasley*). (*Davis, supra,* 17 Cal.4th at p. 446, fn. 5.) In light of the rationale in *Davis* and the plain language of section 1021.5, we now conclude that *Beasley* was improperly decided.

In *Beasley,* the court concluded that "[b]ecause our Legislature relied heavily on the *pre-Alyeska* federal decisions in enacting section 1021.5, we must *assume* the Legislature intended to adopt the *pre-Alyeska* federal practice of awarding expert witness fees . . . ." (*Beasley, supra,* 235 Cal.App.3d at p. 1421, italics added.) While it is indisputably correct that the Legislature *considered* pre-*Alyeska* federal decisions in crafting section 1021.5 (see *Woodland Hills, supra,* 23 Cal.3d 917), the *Beasley* court erred in assuming that the Legislature intended "to adopt the *pre-Alyeska* federal practice of awarding expert witness fees . . . ." (*Beasley, supra,* 235 Cal.App.3d at p. 1421.) Rather than interpret a statutory provision based upon an assumption about the Legislature's intent, courts must analyze a statute's plain language, and may look to the legislative history underlying a statute's enactment only if the plain language is ambiguous. (See *People v. Cole, supra,* 38 Cal.4th at p. 975.) Indeed, *Beasley* was criticized by the Court of Appeal below and in *Benson v. Kwikset Corp.* (2007) 152 Cal.App.4th 1254 [62 Cal.Rptr.3d 284], for making an assumption regarding the legislative intent underlying section 1021.5 without relying on the plain language of the statute or its legislative history. (*Benson, supra,* 152 Cal.App.4th at p. 1282.)

In reaching its erroneous conclusion regarding the legislative intent underlying section 1021.5—that the Legislature intended to resurrect the pre-*Alyeska* authority permitting an award of expert witness fees to a prevailing party in a private attorney general action—*Beasley* relied on our decision in *Woodland Hills.* (*Beasley, supra,* 235 Cal.App.3d at pp. 1421–1422.) In *Woodland Hills,* we considered whether section 1021.5 applied to cases pending prior to the passage of the statute. (*Woodland Hills, supra,* 23 Cal.3d at p. 925.) We concluded that section 1021.5 should be applied retroactively, reversed the trial court's judgment denying attorney fees, and remanded the matter to the trial court for further consideration in light of section 1021.5. (*Woodland Hills, supra,* 23 Cal.3d at p. 925.) In *Woodland Hills,* we discussed only whether attorney fees could be awarded to prevailing parties bringing private attorney general actions; expert witness fees were not discussed. We noted that "[i]t is clear from both the statutory framework and language that in drafting section 1021.5 the Legislature relied heavily on the

pre-*Alyeska* federal private attorney general authorities . . . ; indeed, we do not doubt that in significant measure the legislation was an explicit reaction to the United States Supreme Court's *Alyeska* decision. The statute reflected a legislative declaration that, in California, courts do enjoy the authority— exercised in numerous pre-*Alyeska* federal decisions—to award *attorney fees* on a private attorney general theory. Because in framing the provisions of section 1021.5, the Legislature drew heavily upon the *pre-Alyeska* federal decisions, we believe that such authorities—while no longer viable in the federal realm—will often be helpful and reliable guides in interpreting the various provisions of the California statutes." (*Id.* at p. 934, italics added.) Our language was significant. We did not state that *pre-Alyeska* federal decisions were dispositive interpretations of section 1021.5. We stated only that such cases "will often be helpful and reliable guides . . . ." (*Woodland Hills, supra,* 23 Cal.3d at p. 934.)

We cannot conclude, as the *Beasley* court did, that section 1021.5 was intended to revive pre-*Alyeska* federal decisional authority permitting an award of expert witness fees. As discussed below, the Legislature certainly intended that attorney fees could be awarded to a prevailing party on a private attorney general theory; however, section 1021.5's legislative history does not support the conclusion that expert fees may similarly be awarded.

In 1991, the same year that the Court of Appeal decided *Beasley,* the United States Supreme Court examined an analogous issue in *Casey.* (*Casey, supra,* 499 U.S. at pp. 92–102.) In *Casey,* the Supreme Court held that expert witness fees could not be awarded to a prevailing party under 42 United States Code former section 1988—a federal statute similar to section 1021.5—because the statute then authorized only an award of attorney fees. (*Casey, supra,* 499 U.S. at p. 102, citing 42 U.S.C. § 1988, as enacted by 90 Stat. 2641.) The *Casey* court explained that numerous federal statutes authorized the award of both attorney fees and expert witness fees, and to hold that expert witness fees could be awarded under a statute providing only for attorney fees would render statutes providing for both "an inexplicable exercise in redundancy." (*Casey, supra,* 499 U.S. at p. 92.) Because 42 United States Code former section 1988 was "both broader and narrower than the pre-*Alyeska* 'regime,' it had not been intended to return the federal courts 'precisely' to the former law, and thus there was no reason to depart from the 'normal import' of the statute's text." (*Beasley, supra,* 235 Cal.App.3d at p. 1421, quoting *Casey, supra,* 499 U.S. at p. 97.)

Declining to adopt the *Casey* court's analysis, *Beasley* held that section 1021.5 "was an explicit reaction to *Alyeska*" and therefore authorized the award of expert witness fees. (*Beasley, supra,* 235 Cal.App.3d at p. 1420.) The high court's interpretation of a federal statute does not, of course, inform

our interpretation of the Legislature's intent in enacting section 1021.5. Nonetheless, the *Beasley* court would have been well served by adopting the *Casey* court's analysis regarding a statute nearly identical to section 1021.5, instead of improperly assuming that section 1021.5 was intended to restore the pre-*Alyeska* federal authority permitting an award of expert witness fees to a prevailing party in a private attorney general action. (*Beasley, supra*, 235 Cal.App.3d at p. 1421.) Indeed, the *Casey* court considered a similar argument with respect to 42 United States Code former section 1988. (*Casey, supra*, 499 U.S. at pp. 92–102.) The *Casey* court examined the legislative history underlying the federal statute at issue, which referenced the *La Raza Unida* decision.[5] The dissent in *Casey* contended, as plaintiffs do here, that references to cases like *La Raza Unida* in legislative history indicate an intent to return to a pre-*Alyeska* regime. (*Casey, supra*, 499 U.S. at p. 109 (dis. opn. of Stevens, J.).) As the Supreme Court recognized in *Casey,* and we also recognize with respect to section 1021.5, that is simply not the case. (*Casey, supra*, 499 U.S. at pp. 97–98.) Neither 42 United States Code former section 1988, nor section 1021.5 was intended to resurrect the entire body of pre-*Alyeska* federal authority.[6]

As we note above, the plain language of section 1021.5 does not expressly authorize an award of expert witness fees. Plaintiffs contend that the legislative history of section 1021.5 supports awarding expert witness fees in addition to attorney fees because "*La Raza Unida,* which awarded expert-witness fees, was referred to with approval numerous times."

While section 1021.5's legislative history includes references to *La Raza Unida,* plaintiffs' argument that such references demonstrate an intent to codify the holding of *La Raza Unida* in section 1021.5 is incorrect. Section 1021.5, enacted in 1977, was introduced as Assembly Bill No. 1310 (1977–1978 Reg. Sess.) by Assemblyman Berman. (See Stats. 1977, ch. 1197, § 1, p. 3979.) Two previous bills on the same subject, Senate Bill No. 664 (1975–1976 Reg. Sess.) and Assembly Bill No. 3257 (1975–1976 Reg. Sess.), failed to pass out of their respective houses. The references to *La Raza Unida*

---

[5] One version of Senate Bill No. 664 (1975–1976 Reg. Sess.), a precursor of Assembly Bill No. 1310 (1977–1978 Reg. Sess.), which ultimately enacted section 1021.5, appeared to adopt portions of the *La Raza Unida* holding. As is discussed more fully below, although the Legislature may have intended to codify the *La Raza Unida* holding in Senate Bill No. 664, that bill failed to make it out of the Senate. Assembly Bill No. 1310 significantly departed from the amended language of Senate Bill No. 664, and there is no indication that Assembly Bill No. 1310—enacted as section 1021.5—was intended to codify the holding of *La Raza Unida.*

[6] *Beasley v. Wells Fargo Bank, supra*, 235 Cal.App.3d 1407, is disapproved to the extent that it is inconsistent with our holding.

alluded to by plaintiffs predominantly appeared in legislative history materials connected to an amended version of failed Senate Bill No. 664, not Assembly Bill No. 1310.

Senate Bill No. 664 (1975–1976 Reg. Sess.) was first introduced by Senator Song. Amendments to this bill, made in the Senate, may have been intended to codify the decision in *La Raza Unida*. *La Raza Unida* held that a court had authority to award attorney fees and expert witness fees to a prevailing plaintiff absent specific statutory authorization when an action was brought under a private attorney general theory. (*La Raza Unida, supra,* 57 F.R.D. at pp. 101, 102.) The court used three factors to determine when attorney fees should be awarded to a prevailing plaintiff: "1) the effectuation of strong public policies; 2) the fact that numerous people received benefits from plaintiffs' litigation success; [and] 3) the fact that only a private party could have been expected to bring [the] action . . . ." (*Id.* at p. 101.) Finding that the plaintiffs satisfied all three factors, the court permitted an award of attorney fees and expert witness fees. (*Id.* at pp. 101–102.)

Consistent with the holding in *La Raza Unida,* the amended version of Senate Bill No. 664 (1975–1976 Reg. Sess.) proposed authorizing the award of "attorney's fees, *costs, and other expenses* . . . ." (Sen. Bill No. 664 (1975–1976 Reg. Sess.) as amended Sept. 11, 1975, italics added.)[7] The language of the amended version of Senate Bill No. 664 also closely mirrored the three factors outlined in *La Raza Unida.* Indeed, if section 1021.5 had been enacted by Senate Bill No. 664 as amended, plaintiffs would have a strong argument that the Legislature intended the statute to be a codification of the holding of *La Raza Unida.* However, Senate Bill No. 664 failed to pass out of the Senate and died.

The following year, 1976, Assembly Bill No. 3257 (1975–1976 Reg. Sess.) was introduced by Assemblyman Miller. Assembly Bill No. 3257 differed in two significant respects from the amended version of Senate Bill No. 664 (1975–1976 Reg. Sess.). First, Assembly Bill No. 3257 omitted reference to "costs, and other expenses" and, instead, mentioned *only* the award of attorney fees. (Compare Sen. Bill No. 664 (1975–1976 Reg. Sess.) as amended Sept. 11, 1975, with Assem. Bill No. 3257 (1975–1976 Reg. Sess.) as introduced Mar. 31, 1977.) Second, Assembly Bill No. 3257 modified the

---

[7] The amended version of Senate Bill No. 664 (1975–1976 Reg. Sess.) proposed to add section 1021.5 to the Code of Civil Procedure as follows: "Upon motion, a court shall award attorney's fees, costs, and expenses to a prevailing plaintiff against a defendant in any action which has resulted in the enforcement of an important right, if a significant benefit has been conferred on a large class of persons and the necessity and financial burden of private enforcement are such as make the award essential. [¶] As used in this section, 'significant benefit' includes a nonpecuniary, as well as a pecuniary, benefit." (Sen. Bill No. 664 (1975–1976 Reg. Sess.) as amended Sept. 11, 1975.)

*La Raza Unida* factors articulated in the amended version of Senate Bill No. 664, instead requiring an additional affirmative demonstration of financial burden and a showing that attorney fees could not be paid out of a recovery before such fees would be authorized. Assembly Bill No. 3257 also failed to pass out of the Assembly and died.

Finally, in 1977, Assemblyman Berman introduced Assembly Bill No. 1310 (1977–1978 Reg. Sess.). Assembly Bill No. 1310 mirrored almost exactly the language used in Assembly Bill No. 3257 (1975–1976 Reg. Sess.). Like Assembly Bill No. 3257, Assembly Bill No. 1310 did not include the phrase "costs, or other expenses," and it included a list of factors significantly modified from the factors articulated in the *La Raza Unida* decision. The final enrolled version of Assembly Bill No. 1310 is significantly different from the amended version of Senate Bill No. 664 (1975–1976 Reg. Sess.). We cannot conclude, therefore, that the Legislature intended Assembly Bill No. 1310 to codify *La Raza Unida*'s holding permitting an award of expert witness fees, particularly in light of the plain language of the statute demonstrating otherwise.

Plaintiffs also argue that section 1021.5 necessarily authorizes the award of expert witness fees because the Legislature acquiesced in the decision in *Beasley* because it amended section 1021.5 after the *Beasley* decision without altering the attorney fees provision. While plaintiffs' contention is not without some weight, there is insufficient evidence to demonstrate legislative acquiescence.

The Court of Appeal rejected plaintiffs' argument that the Legislature acquiesced in the *Beasley* decision by noting that our decision in *People v. Salas* (2006) 37 Cal.4th 967, 979 [38 Cal.Rptr.3d 624, 127 P.3d 40] (*Salas*), stood for the proposition that a legislative acquiescence argument is most compelling when a decision invites the Legislature to act and the Legislature declines to do so. Plaintiffs argue that the Court of Appeal misread our opinion in *Salas*. We disagree.

In *Salas,* we considered the meaning of a provision of the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.), which we had last examined 10 years earlier. (*Salas, supra,* 37 Cal.4th at p. 979.) In our earlier decision, we had "invited the Legislature to clarify" a provision of the Corporate Securities Law of 1968. (*Salas, supra,* 37 Cal.4th at p. 979.) Though the law had been amended numerous times in the 10 years between our prior decision and *Salas,* the Legislature never clarified the provision at issue. We concluded that because the Legislature had declined to amend the statute to abrogate our prior decision despite making numerous other amendments in the intervening years, and because the prior decision had been

followed on many occasions during the intervening years, the Legislature had acquiesced in our initial interpretation. (*Id.* at pp. 979–981.)

Plaintiffs urge us to consider our decision in *People v. Bouzas* (1991) 53 Cal.3d 467 [279 Cal.Rptr. 847, 807 P.2d 1076] (*Bouzas*), in which we concluded that "[w]hen a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute." (*Id.* at p. 475.) The facts of *Bouzas* are distinguishable from the facts here. In *Bouzas,* the statutes at issue were amended "at least 10 times between 1903 and 1976 without altering the courts' consistent interpretation" of the provisions at issue. (*Ibid.*) The statutes were finally merged, still without indicating that the Legislature intended to alter the "courts' consistent interpretation." (*Ibid.*) Under such circumstances, we were "compelled to conclude that the Legislature acquiesced in and ratified the judicial interpretation of the prior versions of [the statutes] and intended that the present version of [the newly merged statute] receive a like interpretation." (*Ibid.*)

■ This case does not present facts as compelling as those present in *Salas* or *Bouzas*. Here, in 1993, the Legislature amended a portion of section 1021.5 unrelated to the definition of attorney fees two years after a single Court of Appeal decision (*Beasley*) had interpreted that statute. (Stats. 1993, ch. 645, § 2, p. 3747.) Plaintiffs cite no case, and we are aware of none, that cited *Beasley,* approvingly or otherwise, in the intervening two years. While it may sometimes be true that legislative inaction signals acquiescence when there exists both a well-developed body of law interpreting a statutory provision and numerous amendments to a statute without altering the interpreted provision, that is not the case here. Accordingly, we find plaintiffs' legislative acquiescence argument unpersuasive.

■ Finally, plaintiffs argue that policy considerations support the conclusion that section 1021.5 authorizes an award of expert witness fees. Plaintiffs contend that section 1021.5's "purpose is to encourage private lawsuits that enforce important public rights or help large classes." Regardless of the merit of plaintiffs' argument, public policy alone is insufficient to permit this court to craft such a rule, in direct contravention of the statute's plain meaning. The plain language of section 1021.5 simply does not support plaintiffs' position that section 1021.5 permits an award of expert witness fees.

CONCLUSION

■ Nothing in *Davis* or the plain language of section 1021.5 indicates that the statute authorizes the award of expert witness fees. Accordingly, we

affirm the Court of Appeal's judgment, and conclude that section 1021.5 does not permit an award of expert witness fees.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.