[No. B210123. Second Dist., Div. Seven. Sept. 24, 2009.]

DEBORAH A. RICKETTS, Plaintiff and Appellant, v.
CONNY B. MCCORMACK et al., Defendants and Respondents;
JOEL ROSENBERG, Intervener and Appellant.

1326

## Counsel

Hodges and Associates, A. Clifton Hodges, James S. Kostas; and Donald W. Ricketts for Plaintiff and Appellant and for Intervener and Appellant.

Robert E. Kalunian, Acting County Counsel, Steven J. Carnevale, Assistant County Counsel, Nancy M. Takade, Principal Deputy County Counsel; Jones Day, Elwood Lui, Brian D. Hershman, John S. Sasaki and Peter E. Davids for Defendants and Respondents.

OPINION

**PERLUSS, P. J.**—Civil Code section 2941 (section 2941) imposes certain obligations on the parties to a secured real estate loan transaction to promptly clear title to the encumbered property after satisfaction of the loan. As part of this process, section 2941, subdivision (c), requires a county recorder to "stamp and record," within two business days from the day of receipt in proper form and with all required fees, a full reconveyance or certificate of discharge confirming the satisfaction of the obligation secured by a deed of trust.[1] What does section 2941, subdivision (c)'s stamp-and-record requirement mean?

Contending the Legislature intended the county recorder to stamp, record *and index* a full reconveyance within two business days of receipt of the form, Deborah A. Ricketts and Joel Rosenberg filed putative class action lawsuits on behalf of all persons harmed by the failure of the County of Los Angeles and its registrar-recorder, Conny B. McCormack (collectively County), to fulfill their statutory duties. Following a bench trial, the trial court rejected Ricketts and Rosenberg's interpretation of the statute and entered judgment in favor of the County. We agree indexing is a distinct function, separate from recording a document, and is not part of section 2941, subdivision (c)'s stamp-and-record requirement. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Alleging the County routinely fails to stamp and record reconveyances presented to them within two business days as required by section 2941, subdivision (c), Ricketts filed a verified class action complaint on July 6, 2004, seeking issuance of a writ of mandate ordering the County to comply with its statutory duties and the recovery of damages on behalf of all class members and forfeiture of $500 per violation, as authorized by section 2941, subdivision (d).[2] The complaint contained a separate cause of action, also

---

[1] Section 2941, subdivision (c), provides in part, "Within two business days from the day of receipt, if received in recordable form together with all required fees, the county recorder shall stamp and record the full reconveyance or certificate of discharge."

A reconveyance is the instrument that clears title to property subject to a recorded deed of trust. The lender/beneficiary initiates the process of reconveying title to the debtor/trustor by delivering to the trustee the original note, the deed of trust and a request for a full reconveyance. (See § 2941, subd. (b)(1); see generally *Trustors Security Service v. Title Recon Tracking Service* (1996) 49 Cal.App.4th 592, 595–597 [56 Cal.Rptr.2d 793], superseded by statute on other grounds as stated in *Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 524 [48 Cal.Rptr.3d 217] [describing overall process for recordation of deeds of trust and reconveyances].)

[2] Section 2941, subdivision (d), provides, "The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may

seeking classwide monetary relief, alleging the County had violated its duty under Government Code section 27201 et seq. to record, index and make available to the public within a reasonable time documents affecting title to real property located in Los Angeles County.

The trial court dismissed the two causes of action seeking damages and forfeitures based on Ricketts's failure to comply with the government claims presentation requirement. (See Gov. Code, § 900 et seq.)[3] Shortly thereafter, the trial court granted Rosenberg's motion for leave to file a class action complaint in intervention. Rosenberg's complaint contained a cause of action petitioning for mandamus relief, similar to Ricketts's, alleging the County failed to stamp and record reconveyances within two days of receipt. He also attempted to allege a cause of action for imposition of a constructive trust for wrongfully detained statutory penalties. The County successfully demurred to the cause of action for imposition of a constructive trust, leaving essentially identical petitions for mandamus relief as the only claims in the case.

In August 2006 Ricketts moved for summary judgment on her mandamus claim, arguing the stamp-and-record requirement of section 2941, subdivision (c), required reconveyances to be entered into the recorder's general index within the statutory two-day period, so that they would be readily available to individuals conducting a computerized title search. Inexplicably, the County's lawyer conceded the stamp-and-record requirement included indexing. Because indexing was not always completed within the two-day period,[4] the court granted the motion and on March 7, 2007 entered a judgment in favor of Ricketts for issuance of a writ of mandate commanding the County "to record and index reconveyances or certificates of discharge within two business days of receipt."

---

sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of five hundred dollars ($500)."

[3] Rather than appeal the dismissal order, Ricketts's attorneys filed a new class action with a different class representative as plaintiff, presumably after complying with the applicable government claims presentation requirements. (See *Conner v. McCormack* (Super. Ct. L.A. County, No. BC366355).) The parties agreed to stay the second action pending the outcome of this appeal.

[4] As described by the trial court in its opinion and order on Ricketts's motion for summary judgment and writ of mandate, "In their Opposition papers, Defendants did not discuss what it means to be 'recorded' within the meaning of Section 2941(c). However, in oral argument, Defendants conceded that to be properly recorded within the meaning of Section 2941(c), the reconveyances must be stamped, indexed, and made publicly available. (Reporter's Transcript, 2:3-5: Defendants' counsel states: 'I do agree that [in order for something to be recorded] it needs to be stamped and indexed and . . . the index needs to be available to the public.') Defendants do not dispute that the reconveyances tracked by Plaintiff were not stamped, indexed, and made publicly available within the two-day deadline articulated in Section 2941(c)."

After associating in new counsel, the County moved for a new trial on the ground the writ of mandate was overbroad. In particular, the County now argued section 2941, subdivision (c), required only that the reconveyance be stamped and recorded, not indexed, within the two-day period. On May 7, 2007 the court granted the motion for a new trial. Ricketts did not appeal the court's ruling.

In December 2007 Ricketts's and Rosenberg's petitions for a writ of mandate were tried to the court. The County contended a reconveyance is recorded within the meaning of section 2941 when it is accepted for recording by the recorder (that is, the reconveyance is presented in the correct form and with the proper fee) and the recorder applies a permanent recording number. Ricketts and Rosenberg argued the reconveyance is not recorded until it is indexed and a digital image of the reconveyance document is made available to the public. In a tentative decision issued on May 8, 2008, the court denied the claim, concluding the phrase "stamp and record" could not reasonably be understood to require indexing within the two-day period prescribed by section 2941, subdivision (c). Instead, a reconveyance is recorded "when the Recorder endorses on a reconveyance the order of receipt, the day and time of receipt and the amount of fees paid."

In reaching its decision, the court made the following factual findings about the recorder's practices: "A document examiner reviews the reconveyance to determine whether or not it meets all recording requirements. If the reconveyance does meet those requirements, the document examiner creates an entry for the document in the Enterprise Recording Archive ('ERA') system. The ERA system calculates the fees payable and prints out a sheet with a temporary examination number ('TEN') and bar code. Thereafter, a cashier scans the bar code, bringing up a computer screen displaying the entries for the reconveyance that the examiner made in the ERA system. The cashier makes sure the check received with the reconveyance matches the fees due as indicated in the ERA system. If the fees are correct, the cashier accepts the check and generates a 'lead sheet.' The lead sheet includes the following: (1) the eleven-digit permanent recording number assigned to the reconveyance, (2) a bar code, (3) the number of pages of the document, (4) the date and time of the transaction, (5) the TEN, (6) the amount of fees paid, (7) how the document arrived (e.g., counter, mail), (8) a transaction number, (9) the seal of the County of Los Angeles, and (10) the words 'Recorded/Filed in Official Records [¶] Recorder's Office, Los Angeles County, California.' At this point, the Recorder considers the recording process to be complete."

Moreover, once a lead sheet is generated and the reconveyance is stamped with the legend "Recorded/Filed in Official Records," a member of the public may obtain a certified copy of the reconveyance. Although the trial court viewed this evidence as irrelevant to its conclusion that the County had complied with section 2941, subdivision (c), the court also found certified copies of the reconveyance could be obtained from the point of filing if the requestor has the recording number assigned to the document or within 24 hours by reviewing "grey film" or "blotter film" pending the entry of a digital image of the document into the indexed database. Finally, the trial court found reconveyances are routinely stamped and recorded (with very few exceptions) within two business days of receipt.

The court's tentative decision became final 10 days after it was issued when none of the parties submitted objections. (See Cal. Rules of Court, rule 3.1590 et seq.) Judgment was entered in favor of the County on June 13, 2008.

## CONTENTIONS

Ricketts and Rosenberg contend the trial court erred in construing section 2941, subdivision (c), only to require the recorder to stamp and record reconveyances within two business days, rather than stamp, record and index them within two business days. They also contend the trial court erred in granting the County's motion for a new trial following the initial grant of summary judgment in favor of Ricketts.

## DISCUSSION

1. *The Trial Court Correctly Construed Section 2941, Subdivision (c), Not to Require Indexing Within Two Business Days*

   a. *Standard of review*

Ricketts and Rosenberg do not challenge the trial court's factual findings. Instead, they contend the trial court erred in construing the stamp-and-record language of section 2941, subdivision (c), not to require indexing of reconveyances within the two-business-day limitation period. We review the trial court's interpretation of the statute de novo. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [93 Cal.Rptr.3d 559, 207 P.3d 20] [the meaning of statutory language presents a question of law that we review de novo]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d

200, 11 P.3d 956]; see *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].)[5]

### b. *The statutory language*

■ Civil Code section 2941 regulates the process for preparing and recording a reconveyance of a deed of trust after a borrower repays a secured loan. Subdivision (b) requires the lender to send the original promissory note and a request for reconveyance to the trustee within 30 days after the borrower has repaid the loan. The trustee then has 21 days to record or cause the reconveyance to be recorded. Subdivision (c) defines "cause to be recorded" as delivery (via certified mail or an independent delivery service) to the recorder's office in the correct form and accompanied by the correct fee and creates a presumption that the trustee has complied with the statute if the trustee meets these requirements. Subdivision (c) also prescribes the duties of the county recorder in this process: "Within two business days from the day of receipt, if received in recordable form together with all required fees, the county recorder shall stamp and record the full reconveyance or certificate of discharge."[6]

---

[5] We are guided by well-established principles of statutory construction. Our fundamental task is to ascertain the Legislature's intent and thereby effectuate the purpose of the statute. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882]; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) "We begin with the statutory language because it is generally the most reliable indication of legislative intent." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629].) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]; see also *Smith*, at p. 83.) "If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Day*, at p. 272.) "[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420]; see also *Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 118 [80 Cal.Rptr.3d 326] ["[w]e presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules"].)

[6] Section 2941, subdivision (c), provides in full: "For the purposes of this section, the phrases 'cause to be recorded' and 'cause it to be recorded' include, but are not limited to, sending by certified mail with the United States Postal Service or by an independent courier service using its tracking service that provides documentation of receipt and delivery, including the signature of the recipient, the full reconveyance or certificate of discharge in a recordable form, together with payment for all required fees, in an envelope addressed to the county recorder's office of the county in which the deed of trust or mortgage is recorded. Within two business days from the day of receipt, if received in recordable form together with all required

The statute, on its face, seems clear: The recorder is required to do nothing more than "stamp and record" reconveyances; he or she is not required to "stamp, record *and index*" them.[7] (See *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321] ["[o]rdinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction"].) An ambiguity potentially arises only from the assertion, urged by Ricketts and Rosenberg and originally accepted by the County, the term "record" inherently includes indexing of the document to provide notice to anyone researching the title of the subject property.

The Legislature has, of course, used the terms "record" and "index" in other contexts. In the Government Code provisions prescribing the general duties of the county recorder (see Gov. Code, § 27201 et seq.), for example, in detailing the "manner of recording" the Legislature has instructed the recorder to "endorse upon [the instrument] in the order in which it is deposited, the year, month, day, hour, and minute of its reception, and the amount of fees for recording," "record it without delay" and "note on the record its identification number, and the name of the person at whose request it is recorded." (Gov. Code, § 27320.) This statute makes no mention of indexing the document as part of the task of recording it. That duty is separately specified in Government Code section 27324, which requires all instruments "presented for recordation" to "have a title or titles indicating the kind or kinds of documents contained therein," and the recorder is "required to index only that title or titles captioned on the first page of a document . . . ." Elsewhere, the Legislature has directed the recorder to maintain various categories of indices, including grantors (Gov. Code, § 27232), grantees (Gov. Code, § 27233), mortgagors of real and personal property (Gov. Code, § 27234), and mortgagees of real and personal property (Gov. Code, § 27235). (See also Gov. Code, §§ 27236–27256 [describing additional indexing requirements].) Alternatively, the recorder must maintain a general index that would "impart notice in like manner and effect . . . ." (Gov. Code, § 27257, subd. (b).) Indexing, in other words, is prescribed as an entirely independent duty of the recorder.[8]

---

fees, the county recorder shall stamp and record the full reconveyance or certificate of discharge. Compliance with this subdivision shall entitle the trustee to the benefit of the presumption found in Section 641 of the Evidence Code." Evidence Code section 641 provides, "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail."

[7] As the County observes, "[t]he dictionary definition of 'record' is 'to set down for preservation in writing or some other form,' or 'to register.' (Webster's II New College Dictionary (3d ed. 2005), p. 949.) 'Indexing,' by contrast, is the act of entering something onto an index, which is 'something serving to guide, point out, or otherwise aid reference.' "

[8] Indeed, although the required statutory fee covers the recorder's services for "recording and indexing" documents (Gov. Code, § 27361), the recorder may charge additional fees for additional indexing services (Gov. Code, § 27328). This distinction holds in other contexts, as

■ Because the Legislature clearly structured these duties into two separate functions with respect to other aspects of the recorder's responsibilities, there is simply no reason to distort the commonsense meaning of the word "record" and construe it to mean "record and index" when used in section 2941, subdivision (c). Nonetheless, Ricketts and Rosenberg argue, if indexing is excluded from the term "record," then "record" itself is surplusage because, in their view, there is no distinction between the act of "stamping" a document and "recording" it. (See, e.g., *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified School Dist.* (1978) 21 Cal.3d 650, 658–659 [147 Cal.Rptr. 359, 580 P.2d 1155] ■ [" ' "If possible, significance should be given to every word"; "a construction making some words surplusage is to be avoided" ' "].) ■ But, as the findings of the trial court explain, "the 'stamp[ing]' requirement of section 2941[, subdivision] (c)[,] is satisfied when the recorder endorses on a reconveyance the order of receipt, the day and time of receipt and the amount of fees paid." The reconveyance is "recorded" once the recorder has confirmed the document meets all recording requirements, created an entry for the document in the ERA (enterprise recording archive) system, calculated the required fees and confirmed payment of the correct amount and, finally, generated a lead sheet containing, among other things, a bar code, a permanent recording number and the words "Recorded/Filed in Official Records."[9]

---

well. For example, Civil Code section 2924b, subdivision (a), provides in part, "Upon the filing for record of the request [for default], the recorder shall index in the general index of grantors the names of the trustors (or mortgagor) recited therein and the names of persons requesting copies." Thus, the Legislature plainly contemplated two steps: (1) the recording of the default; and (2) the indexing of the recorded document.

[9] Relying on the language of Government Code section 27322—"The recorder shall record by legible handwriting, by typewriting, or by photographic reproduction process, in well-bound books or by such other means . . ."—Ricketts and Rosenberg additionally argue the Recorder's failure to "copy" the original document presented for recording within two business days means the document has not been properly recorded. Because this argument was not presented to the trial court, it is forfeited. (See, e.g., *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [82 Cal.Rptr.3d 229, 190 P.3d 586]; *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 873–874 [242 Cal.Rptr. 184].)

In any event, their contention ignores the reality of modern recording procedures and thus lacks merit. As discussed, the trial court expressly found certified copies of the reconveyance could be obtained from the point of filing if the requestor has the recording number assigned to the document or within 24 hours by reviewing "grey film" or "blotter film" pending entry of a digital image of the document into the indexed database. In other words, the information contained in the document presented for recording is available to the public from the moment the document is stamped and the lead sheet is generated. These procedures are fully compliant with the Legislature's attempt to reconcile the impact of modern technology on recording procedures. (See, e.g., Gov. Code, §§ 27322.2 ["[a] system of microphotography, optical disk, or reproduction by any other technique that does not permit additions, deletions, or changes to the original document may be used by the recorder as a photographic reproduction process . . ."], 27322.4 ["The county recorder may cause any or all files or records in his or her official custody to be microphotographed or otherwise reproduced pursuant to Section 27322.2 as in the case of original filings or recordings or both. Every reproduction shall be deemed and considered an original; and a transcript, exemplification or certified copy, as the case may be, of the original."].)

Ricketts and Rosenberg also argue that construing this section to exclude indexing renders the statutory time limitation meaningless because California courts have consistently held a reconveyance will not constitute constructive notice of the transaction unless it is indexed and retrievable by interested third parties. (See, e.g., *Dyer v. Martinez* (2007) 147 Cal.App.4th 1240, 1243–1245 [54 Cal.Rptr.3d 907] [discussing cases].) But, as the trial court observed, these cases "do not conflate recording and indexing of documents." Absent any express statutory limitation on the permissible time between recording and indexing of a document, we are unwilling to infer one that will cloud this long-standing rule of law.

In sum, the plain meaning of the phrase "stamp and record" as used in section 2941, subdivision (c), requires the county recorder to process the reconveyance in the manner described above, but does not include the additional—and separate—obligation to index the document in the appropriate databases. (See generally *People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313] [" '[i]n interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law' "]; *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 993 [73 Cal.Rptr.2d 682, 953 P.2d 858] [actual words of a statute cannot be ignored].)

    c.   *The legislative history and purpose of section 2941,*
        *subdivision (c)*

■ Although the clarity of the statutory language obviates any need to examine the legislative history of section 2941, subdivision (c), to determine the Legislature's intent, a review of that history[10] reinforces our conclusion the Legislature's requirement that the recorder stamp and record a full reconveyance within two days of its receipt does not impose the additional obligation that the document be indexed within the same period. (See generally *California School Employees Assn. v. Governing Board, supra,* 8 Cal.4th at p. 340 ["Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose."]; *In re Tobacco II Cases, supra,* 46 Cal.4th at p. 316 ["even though recourse to extrinsic material is unnecessary given plain language of statute, we may consult it for material that buttresses our construction of the statutory language"].)

Section 2941 is found in a chapter of the Civil Code governing practices relating to mortgages and trust deeds. (See Civ. Code, § 2920 et seq.) As this

---

[10] The parties presented the legislative history of section 2941, subdivision (c), to the trial court; it is part of the record on appeal. (See Evid. Code, §§ 452, 459, subd. (a).)

court explained some years ago, the Legislature amended section 2941 in 1988 largely in response to problems consumers faced in securing new loans when reconveyances of security interests from prior loans had not been timely executed and recorded. (See *Trustors Security Service v. Title Recon Tracking Service, supra,* 49 Cal.App.4th at p. 596.)[11] The 1988 amendments imposed deadlines for executing and recording reconveyances when loans on real estate have been paid in full and subjected lenders and trustees to both civil and criminal penalties for failing to comply with the statutory deadlines for effecting reconveyances. (*Trustors Security Service,* at pp. 596–597.)

As amended in 1988, former section 2941 did not contain any provisions affecting county recorders. (See Stats. 1988, ch. 1006, § 1, pp. 3287–3290.) The current version of subdivision (c)[12] was added by a 2001 amendment sponsored by the lending industry, which had complained delays by county recorders in recording reconveyances had unfairly exposed them to statutory penalties. (See, e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 996 (1999–2000 Reg. Sess.) as amended June 20, 2000, p. 3; Sen. Com. on Finance, Investment and International Trade, Analysis of Assem. Bill No. 996 (1999–2000 Reg. Sess.) as amended June 7, 2000, p. 2.) To address this problem, Assembly Bill No. 996 (1999–2000 Reg. Sess.) proposed an amendment to section 2941 creating a presumption lenders and trustees had complied with their obligations under the statute by mailing the reconveyance to the county recorder. (See Sen. Amend. to Assem. Bill No. 996 (1999–2000 Reg. Sess.) June 20, 2000.) Ultimately, as enacted, the amendment to section 2941 created a rebuttable presumption under Evidence Code 641 a reconveyance had been received by the recorder if it had been transmitted by certified mail or independent carrier in the proper form and accompanied by the required fee and required county recorders to stamp and record a reconveyance within two days of its receipt. (See Stats. 2000, ch. 1013, § 1.) In effect, the amendment created a safe harbor for lenders and trustees, enabling them

---

[11] "Prior to 1989 there was no specified time period within which a reconveyance had to be recorded after full payment of the loan. Apparently, lenders were not particularly diligent in ensuring reconveyances were executed and recorded once their loans were satisfied despite civil penalties for failure to do so. [Citation.] The problem was apparently particularly acute with large commercial lenders with in-house trustee departments. [Citation.] As a result many property owners experienced problems selling and clearing title to their property. Parcels of land appeared to be encumbered, not only by a current acquisition loan, but by other historical loans on the property which had been satisfied but not reconveyed. With these clouds on title, some California property owners also encountered difficulty in securing new or refinanced loans." (*Trustors Security Service v. Title Recon Tracking Service, supra,* 49 Cal.App.4th at p. 596.)

[12] Current section 2941, subdivision (c), was initially enacted as subdivision (d). (Stats. 2000, ch. 1013, § 1.) It was renumbered without change as subdivision (c) the following year. (See Stats. 2001, ch. 560, § 1.)

to contest claims from their customers the reconveyances had not been recorded and, thus, to avoid the statutory penalties imposed under the 1988 amendments.

Ricketts and Rosenberg have failed to identify anything in this legislative history that suggests the phrase "stamp and record" should be interpreted to also include indexing of received reconveyances. To the contrary, until just days before its passage, the bill would have required county recorders to "stamp and record" reconveyances the day of receipt. (See Sen. Amend. to Assem. Bill No. 996 (1999–2000 Reg. Sess.) Aug. 18, 2000, p. 5 ["[o]n the same day of receipt, if received in recordable form together with all required fees, the county recorder shall stamp and record the full reconveyance or certificate of discharge" (italics omitted)].) County recorders, legitimately concerned about their ability to meet this deadline, secured an amendment allowing two business days to complete this process. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 996 (1999–2000 Reg. Sess.) as amended Aug. 25, 2000 [noting county recorders had requested amendment to allow two business days from date of receipt to stamp and record reconveyances].) There is no indication that the Legislature contemplated county recorders could also index reconveyances within the same timeframe or that it was attempting to address any issue of "constructive notice" to the public in the 2000 amendments. In fact, the Legislature deleted as "unnecessary" references to "constructive notice." (See Sen. Amend. to Assem. Bill No. 996, *supra*, p. 5 ["[c]ompliance with this subdivision shall *not . . . be construed to impart constructive notice . . .*"]; Sen. Floor Hearing on Assem. Bill No. 996 (1999–2000 Reg. Sess.) p. 2 (Aug. 8, 2000), unattributed comments ["I have author amendments that . . . delete the reference to 'constructive notice' since it is unnecessary . . ."]; Assem. Floor Hearing on Assem. Bill No. 996 (1999–2000 Reg. Sess.) as amended Aug. 25, 2000, p. 2 (Aug. 30, 2000), comments of author (L. Papan) concurring in Sen. amendments ["[s]ince the [bill] is concerned only with steps prior to recording, it in no way affects conditions necessary for notice under the recording statutes"].)

2. *Ricketts's Appeal from the Order Granting the County's Motion for a New Trial Is Untimely*

Raising an argument we find unfathomable after a lengthy trial on the merits, Ricketts contends the trial court erred in granting the County's motion for a new trial following its ruling granting her motion for summary

judgment. Whatever merit that argument might have, the appeal is untimely; and we lack jurisdiction to consider it.[13]

██ An order granting a motion for a new trial is appealable. (Code Civ. Proc., § 904.1, subd. (a)(4); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858 [107 Cal.Rptr.2d 841, 24 P.3d 493] [" '[A]ny order granting a new trial is appealable.' [Citation.] There is no exception for an order granting a new trial *following an order granting summary judgment.*"].) The order granting a new trial was issued on May 7, 2007; notice of entry of the order was served on May 16, 2007. The time to appeal from that order has long since expired. ██ (Cal. Rules of Court, rule 8.104(a)(2) [limiting time to appeal after party serves notice of entry of judgment (or appealable order) to 60 days].) Ricketts's appeal from the judgment ultimately entered in the case does not revive her right to appeal the new trial order. (See Code Civ. Proc., § 906 ["[t]he provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken"].)

Acknowledging these general principles of appellate jurisdiction, Ricketts argues her appeal of the new trial order is nonetheless timely because the trial court's order granting summary judgment did not resolve all of the issues in the case, pointing to Rosenberg's pending claim for mandamus relief. (See *Cobb v. University of So. California* (1996) 45 Cal.App.4th 1140, 1146 [53 Cal.Rptr.2d 71] [no appeal lies from order granting motion for new trial before final determination of all issues in lawsuit].) The rule applied in *Cobb* is inapposite.

The complaint in *Cobb*, filed by a single plaintiff, contained causes of action for breach of contract and racial discrimination. (*Cobb v. University of So. California, supra*, 45 Cal.App.4th at p. 1142.) The jury reached a verdict in the plaintiff's favor on the contract claim but deadlocked on the discrimination claim. (*Id.* at p. 1143.) The court entered an interlocutory judgment on the contract claim and ordered a mistrial on the discrimination claim. (*Ibid.*) It then granted the defendant's motions for judgment notwithstanding the verdict and new trial on the contract claim. The plaintiff appealed. (*Ibid.*) Our colleagues in Division Five of this court dismissed the appeal as premature

---

[13] To the extent Rosenberg purports to join in this argument, he lacks standing to do so. The court's order granting the motion for summary judgment and its judgment for issuance of a writ of mandate were entered in favor of Ricketts only. The new trial order, therefore, affected Ricketts, not Rosenberg. (See *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736–737 [97 Cal.Rptr. 385, 488 P.2d 953] [only an aggrieved party has standing to appeal]; see generally Code Civ. Proc., § 902 ["[a]ny party aggrieved may appeal in the cases prescribed in this title"].)

because, due to the mistrial on the discrimination claim, there could be no final determination of the plaintiff's action until that claim was retried. (*Id.* at p. 1144.)

In contrast to the situation in *Cobb*, the judgment entered in Ricketts's favor after her successful summary judgment motion resolved all claims brought by her. It constituted a final judgment as to her and was itself an appealable order. (See *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741 [29 Cal.Rptr.2d 804, 872 P.2d 143] [final judgments "leave nothing to be decided between one or more parties and their adversaries"].) Accordingly, we lack jurisdiction to consider her appeal of the order granting a new trial.

## DISPOSITION

The judgment is affirmed. The County is to recover its costs on appeal.

Zelon, J., and Jackson, J., concurred.

A petition for a rehearing was denied October 20, 2009, and the opinion was modified to read as printed above. The petition of appellant Deborah A. Ricketts for review by the Supreme Court was denied December 17, 2009, S177609.